PETERS V. PHILIPPS ET AL.

1. **Practice:** ON DEMURRER TO PETITION IN EQUITY: SOME RELIEF DUE: DEMURRER OVERRULED. Where it appears that the plaintiff is entitled to *some* of the relief asked in a petition in equity, a demurrer thereto should not be sustained.

2. **Contract:** LEASE OF COAL LANDS FOR ROYALTY: ABUSE OF LEASE: RIGHTS OF LESSOR. Where plaintiff leased coal lands to defendants, who agreed to sink a shaft and mine the coal thereunder, and pay plaintiff a royalty upon the coal so taken out—such royalty being his only consideration for the lease, (for copy of lease see opinion,) *held* that plaintiff had a right to demand that defendants prosecute the mining of coal on his land with reasonable diligence; and that he was entitled to an injunction to restrain defendants from using a shaft, sunk on his land, for the purpose of mining the coal from an adjoining tract which they had leased, while the mining on his land was neglected.

*Appeal from Wapello Circuit Court.*

TUESDAY, JUNE 3.

THIS is an action in equity by which it is sought to cancel and set aside a lease of certain coal lands and mines, and to enjoin the defendants, who are the lessees, from using the lands or mines of plaintiff to mine coal from other lands, and for the appointment of a receiver pending the litigation. There was a demurrer to the petition, which was sustained, and plaintiff appeals.

*McNett & Tisdale*, for appellant.

*Chambers & McElroy* and *Stiles & Beaman*, for appellees.

ROTHROCK, CH. J.—The lease in question is as follows:
" This agreement, made and entered into this twelfth day of January, 1882, by and between John M. Peters and L. L. Peters, of the first part, and Ira Philipps, M. C. Martin and Henry Philipps, of the second part, witnesseth: That the parties of the first part have this day leased unto the parties of

the second part, for the purpose of mining coal and conducting a coal business, the following described land, to-wit:—The N. W. ¼ of N. W. ¼, sec. 13, range 14, township 72, Wapello county, on the terms and conditions named below. The parties of the second part agree to have the mine opened and in operation within nine months from the above date, or forfeit all rights to this lease; and further agree to pay the parties of the first part, or their heirs, three-quarters of a cent per bushel for all coal taken from said land, except the slack and first twenty-five feet of entry coal from such shaft; royalty to be paid every sixty days.

"It is also agreed that the parties of the second part shall not allow the mine to stand idle for more than sixty days at any one time, unless accident, strikes among the miners, or some uncontrollable forces compel them to do so; and, should they fail to do as per above agreement, this lease may be treated as null and void at the option of the parties of the first part.

" The parties of the second part further bind themselves not to sell this lease outright to any other parties, without the consent of the parties of the first part; said parties being obliged to give good and sufficient reasons for refusing said sale, such as inability, irresponsibility, dishonesty, or objections of like character.

"It is agreed that the above article shall not debar the parties of the second part from issuing stock or taking into the business other partners.

" The parties of the first part do hereby lease unto the parties of the second part the above described land, for the purposes mentioned, for the term of twenty years from the date of this paper; and further agree to give to the parties of the second part, free of cost, all slack coal, and all coal taken from the first twenty-five feet of entrance from each shaft; said entrance not to be made wider than is necessary for convenience of the mine. It is further agreed that the parties of the second part shall have full control of the surface land

for the erection of business buildings, residences, shafts, etc., without extra charge, but shall not have use or control of any timber on said land, and shall have privilege of removing any improvements made by them, either before or at the expiration of this lease. The parties of the first part further agree not to sell all or any portion of this land, unless subject to this lease.

· "It is also agreed that the parties of the first part shall have privilege of examining the mine and books at any time."

It is averred in the petition that at the time the lease was made it was thought by all the parties thereto that the coal and coal privileges in and under said land were very valuable, and that, as subsequently tested, from five to five and a half feet thick of extra quality of coal extended under about twenty-five acres of said tract. It is charged that in April, 1882, the defendants bought of one Moffit the coal underlying a piece of land on the north of and adjoining plaintiff's land, and that they sunk a shaft in the northwest corner of plaintiff's land, about seventy feet from the line between said land and the land of Moffit, and that from said shaft they dug an entry north through plaintiff's coal and into the coal of Moffit; that defendants have violated the lease by failing to open and develop the mine in a proper and workmanlike manner, by building an entry where none was required, and in an improper construction of an air course; that after opening the mine, and between October, 1882, and February, 1883, the defendants accounted to and paid plaintiff royalty for about twenty-one thousand bushels of coal mined, and since that time they have only accounted to him for four hundred and thirty-four bushels, and in September, 1883, offered to account for eighty bushels in addition, and claimed that this was all that had been mined from plaintiff's land; and that since March 10, 1883, they ceased to work regularly in plaintiff's coal, and that since that time they have only purposed doing enough work to avoid a forfeiture of the lease, and that such purpose was declared by one of the defendants

in July, 1883; that the defendants, contrary to the lease, are using plaintiff's land, shafts, and entry to mine and ship coal from the Moffit land, and for the past six months have mined ten or fifteen times as much of the Moffit coal as of plaintiff's. It is claimed that plaintiff has suffered damages, on account of the wrongful acts charged, in the sum of $500, and it is averred that the plaintiff has notified the defendants that, because of their violation of the provisions of the lease, the same is forfeited, and possession of the land was demanded.

There are a number of grounds of demurrer to the petition, which we need not set out in detail. The claim is made **1. PRACTICE: on demurrer to petition in equity: some relief due: demurrer overruled.** therein that the petition does not show that plaintiff is entitled to any equitable relief, either by way of injunction, or the appointment of a receiver, or the forfeiture of the lease. The question to be determined is, not whether the plaintiff is entitled to all of the relief he asks for in the prayer of the petition, but is he entitled to any relief in equity, conceding the facts set forth in the petition to be true? We think it is very plain that the petition shows a cause of action in equity. It does **2. CONTRACT: lease of coal lands for royalty: abuse of lease : rights of lessor.** not appear from the contract that the plaintiff leased his land to the defendants to be used by them to establish the place for their mining operations on the surface of the earth, and from thence sink shafts and dig drifts and entries into other lands, and use the plaintiff's land as the place to locate the machinery and deposit the waste from the coal mined on the lands of others. By the allegations of the petition, this is just what defendants are doing. It needs neither argument nor authority to demonstrate that defendants have no such rights under the lease, and that the plaintiff is entitled to an injunction to prevent the further unauthorized use of his land for that purpose. If defendants desired to use the land of plaintiff for this purpose, they should have made a contract to that effect. Whether the plaintiff is entitled to a receiver, or to an absolute forfeiture of the lease, we need not determine.

It would seem that he has the right to demand that the defendants shall prosecute the mining of coal upon the land with reasonable diligence. He leased his land to the defendants for the purpose of mining coal therefrom, and with a view to remuneration by the royalty which the defendants contracted to pay him; and he has a right to demand a fair and reasonable compliance with the contract by the defendants.

But, without further discussion, we think it very clear that he has the right to demand that the defendants shall cease to use his land for the mere purpose of carrying on mining operations on other land. In our opinion the demurrer to the petition should have been overruled.

REVERSED.