Syllabus.

ADAM SHOLL

*v.*

THE GERMAN COAL COMPANY.

*Filed at Ottawa October 31, 1891.*

139    21
165   647

139    21
174   328

139    21
177   503

139        21
e114a²517

1. DEED—*conveying mining privilege—construed.* Where the owner of land made a deed of conveyance, in which was conveyed a tract described, and also the privilege of mining for coal under a one-acre tract near the first tract, it was *held,* that after the coal was all mined from the one-acre tract the grantee had no further rights in the same, and that the deed gave no perpetual license to go over such tract in passing from the first tract.

2. A clause in a deed or contract conferring the privilege of mining for coal under a tract of land, means nothing more or less than the right to enter on the land and remove the coal, and when the coal is all removed the right conferred will cease.

3. EMINENT DOMAIN—*petitioner disputing title of defendant.* Where the petition for the condemnation of land for a right of way does not allege the absolute ownership of a defendant, and possession is taken, but not under any order or process of the court, and the judgment of condemnation is reversed, the petitioner will not thereby be estopped from disputing the title of the defendant.

4. EJECTMENT—*seven years' possession and payment of taxes under color of title.* Where a party, under a deed which is color of title, holds adverse possession and pays all taxes upon the land for seven successive years, he will thereby acquire such a title under the act of 1839 as will authorize a recovery in ejectment by him against any one intruding upon his possession.

5. SAME—*possession and payment of taxes, after divestiture of title.* After one has been divested of his title by his deed of conveyance, or by a decree of court in a proceeding to which he was a party, his adverse possession of the land and payment of taxes for seven successive years will not operate as a bar to an action by the rightful owner under the Limitation act of 1839, for the reason that such possession and payment of taxes are not accompanied by any color of title.

6. COLOR OF TITLE—*erroneous decree may destroy.* A decree in a suit for partition, finding the title to be in certain heirs and against the title claimed by a defendant, even though erroneous, is conclusive on such defendant, and will divest his title, and also any color of title he may have had prior to such decree.

7. Taxes—*proof of payment.* Where the evidence shows that all the taxes on the land standing in the name of a party were paid by him, this will be sufficient, even though the description in some of the tax receipts and in the assessment may not be strictly accurate.

8. Possession—*of part of tract, possession of whole.* The actual possession of a part of a tract of land under a deed for the whole tract will be regarded a possession of the whole.

9. Same—*presumed to continue.* Where a party in the possession of land conveys the same, in the absence of proof to the contrary it will. be presumed that the grantee continued in the possession, the same as his grantor had done before.

Appeal from the Circuit Court of Peoria county; the Hon. T. M. Shaw, Judge, presiding.

Mr. B. S. Prettyman, for the appellant:

Appellee is estopped to deny the title or right of possession of the plaintiff in any part of the premises. Having entered into possession under the proceeding to condemn, even though such proceeding was void, appellee is estopped to controvert the title in Sholl. *Riverside Co.* v. *Townshend,* 120 Ill. 20; *Brooks* v. *Bruyn,* 18 id. 542; *Tighlman* v. *Little,* 13 id. 239; *Bowman* v. *Wettig,* 39 id. 416; *Hardin* v. *Forsythe,* 99 id. 321.

Sholl's title is presumed from his possession, as against appellee, and it is estopped to controvert either. 2 Herman on Estoppel, 1294, 1295, 224; 1 Greenleaf, secs. 25, 27, 205-207; *Railway Co.* v. *Bryant,* 57 Ill. 478; *Suver* v. *Railway Co.* 125 id. 298; Lewis on Eminent Domain, secs. 441, 442.

A deed is color of title only to such land, or that which is shown upon its face to be within the description of the grant. *Railway Co.* v. *Barker,* 125 Ill. 306; *Coleman* v. *Billings,* 89 id. 183.

On the question of limitation, see *Clark* v. *Peckenpaugh,* 46 Ill. 13; *Hinchman* v. *Whetstone,* 23 id. 188; *McDuffee* v. *Sinnott,* 119 id. 450; *Hale* v. *Gladfelder,* 52 id. 97; *Cook* v. *Norton,* 48 id. 20; *Gage* v. *Hampton,* 127 id. 92; *Martin* v. *Judd,* 81 id. 495; *O'Neal* v. *Boone,* 53 id. 36; *Keith* v. *Keith,* 104

id. 402; *Harland* v. *Eastman,* 119 id. 25; *Lancey* v. *Brock,* 110 id. 612.

Messrs. McCulloch & McCulloch, and Messrs. Puterbaugh & Puterbaugh, for the appellee:

Adverse possession must be hostile in its inception, and so continue. It must be open, notorious and exclusive. *Irving* v. *Brownell,* 11 Ill. 402; *McClellan* v. *Kellogg,* 17 id. 498; *Medley* v. *Elliott,* 62 id. 535; *Jackson* v. *Berner,* 48 id. 203; *Cook* v. *Norton,* id. 20; *Ambrose* v. *Raley,* 58 id. 506.

The statute can not operate on the title of plaintiff's grantors until possession under color of title has been shown, with payment of all the taxes for seven years. *Wood* v. *Morton,* 11 Ill. 547; *Pitkin* v. *Yaw,* 13 id. 251; *Holt* v. *Rees,* 44 id. 30; *Clark* v. *Lyon,* 45 id. 388; *Iberg* v. *Webb,* 96 id. 415; *Whitford* v. *Drexel,* 118 id. 600.

The possession of the Weiths in 1865 will be presumed to have continued until an adverse possession is shown. *Shipherd* v. *Underwood,* 55 Ill. 475; 1 Greenleaf on Evidence, sec. 41.

The statute affords protection to the party in possession only to the extent and according to the purport of his paper title. If his paper title is subject to an exception, so must be his title, by limitation. *Lancey* v. *Brock,* 110 Ill. 609.

A deed without a seal may be color of title. *Watts* v. *Parker,* 27 Ill. 224; *Kruse* v. *Wilson,* 79 id. 233.

Possession of part of a tract under a deed for the whole is possession for all described in the deed. *Dills* v. *Hubbard,* 21 Ill. 328; *Bowman* v. *Wettig,* 39 id. 416; *Pearson* v. *Herr,* 53 id. 144.

The condemnation proceeding did not estop the appellee to question appellant's title. Herman on Estoppel, sec. 146.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of ejectment, brought by Adam Sholl, against the German Coal Company, to recover a strip of land fifty feet wide and two or three hundred feet long, situated partly in the north-east quarter of section 11 and partly in the north-west quarter of section 12, township 7, north, range 7, east, in Peoria county. A trial was had before the court, by agreement, without a jury, and the court rendered judgment for plaintiff for the land lying in section 11, and judgment for the defendant for the land in section 12. Both parties were dissatisfied with the judgment, and appealed.

It is conceded in the argument that both parties claim from a common source of title; that prior to and on December 25, 1850, Ansel Haines owned in fee the north-west quarter of section 12 and the east half of the north-east quarter of section 11. At the same time George and Conrad Weith owned the south-east quarter of section 2, in the same township. The three quarters all connect with each other, and a public highway passed over the lands, the section corner of the quarter being near the center of the road. As before observed, the court, on the evidence, found in favor of the plaintiff as to the land in controversy in section 11 and against him as to the land in section 12, and in disposing of the case we will consider first the objections to the judgment in regard to the last named land.

On the trial, plaintiff read in evidence a deed dated December 25, 1850, from Ansel Haines and wife to Jonathan Haines, conveying the undivided half of the east half of the north-east quarter of section 11 and the north-west quarter of section 12. This deed was acknowledged January 17, 1851, and recorded March 16, 1857. The plaintiff also read in evidence a deed dated April 12, 1853, from Ansel and Jonathan Haines to Gideon H. Rupert and Thomas N. Gill, and a deed from the latter to Gideon H. Rupert, dated November 17, 1855. Rupert

continued to hold the title conveyed to him until his death, on February 19, 1877. After the death of Rupert, his executor, who had power to sell, on July 21, 1882, conveyed the premises to Erwin Kuhn, and on the 4th day of August, 1885, Erwin Kuhn conveyed to the plaintiff. Conceding that the title to the premises was originally in Ansel Haines, as is done in the argument, the deeds put in evidence by the plaintiff might be regarded as sufficient to establish paramount title in him had the defendant introduced no title papers. After, however, the plaintiff had introduced his evidence, the defendant read in evidence a deed from Ansel Haines to Conrad and George Weith, conveying a part of the land in controversy in that section, and conveying the north-west quarter of section 12, and a right to mine coal in one acre of land in the north-east corner of section 11, dated January 2, 1851, acknowledged the same day, and recorded February 27, 1852. Upon the execution of this deed the Weiths took possession of the premises conveyed, opened a coal mine, and operated the same for a number of years, until 1865.

While the deed from Ansel Haines to Jonathan Haines, under which plaintiff claimed, is prior in date to the deed made to the Weiths, it is insisted that it was not delivered until after the deed to the Weiths was executed and delivered, and that the latter deed will pass the title, regardless of the former one. We shall not stop to consider which one of the two deeds in question is entitled to priority, as in the view we take of the case that is not a material question, as will more fully appear hereafter.

Conrad and George Weith died intestate in the year 186—, and in 1868 the guardian of some of the Weith heirs instituted a proceeding, under the statute, to partition the south-west quarter of section 2, and certain other lands belonging to his wards. Julia White, who was formerly the wife of Conrad Weith, and her husband, William White, in 1869 filed a bill in chancery to enjoin the proceeding under the statute, and for

a partition of all the lands belonging to the Weiths at the time of their death, including the land involved in this proceeding. Gideon H. Rupert was made a party defendant to the bill and was personally served with process, but he did not appear, and he was defaulted. It was alleged in the bill that William and Julia White, and other heirs of White, were the owners in fee of the south-east quarter of section 2; that on or about the 2d day of January, 1851, Conrad and George Weith purchased of Ansel Haines, who then was possessed of and owned the following land: Commencing at the north-west corner of section 12, in township 7, north, range 7, east of the fourth principal meridian, in said Peoria county; thence running south eight rods; thence south sixty-three degrees east twenty rods; thence north twenty-seven degrees east fifteen rods; thence to the place of beginning, twenty-six and one-half rods. Also, commencing at the south-east corner of the above described piece, a strip of land four rods wide, running south forty-seven degrees east to the Illinois river, together with a piece along the river bank five rods wide, extending fourteen rods above and fourteen rods below said strip, four rods wide, running to the river above described, making the last said piece extend thirty-two rods in length parallel with the river, and five rods wide, and to contain one acre. Also the privilege of mining for coal under the following described piece of land, to-wit,—describing the one acre of land in the north-east corner of the east half of the north-east quarter of section 11. The bill then set up the following: "Said Ansel Haines reserving to himself, his heirs and assigns, the right and privilege to enclose and fence said lands, and to cross the same with wagon, buggy and carts, or anything that will not obstruct any of the improvements of the purchasers, as set forth in a deed of conveyance of Ansel Haines and wife to George and Conrad Weith, dated January 2, 1851, recorded in Peoria county February 27, 1852, in book 'AA,' page 416. Filing copy of said deed with bill of record, page 286."

In the decree the court found the equity in the case with the complainants, the original and amended bills to be true as stated, and the said Weiths, and representatives of said Weiths, were owners in fee of the lands described in the deed from Haines, and the same should be partitioned according to their respective rights, as alleged in the bill. Commissioners were appointed to make partition, and a report having been filed that the lands could not be divided without manifest prejudice to the interest of the owners, a decree of sale was entered.

The decree may have been erroneous, but as Gideon H. Rupert was a party to the proceedings, and personally served with process, and as the validity of the deed from Ansel Haines to Jonathan Haines, and also the deed from Ansel Haines to Conrad and George Weith, was involved, until the decree is reversed by a direct proceeding Rupert is bound and concluded by it. When the court has jurisdiction of the person and subject matter, the rule is a familiar one that the decree will be conclusive on all persons who were parties to the proceeding. The decree, as is apparent from its terms, divested Gideon H. Rupert of all title to the land involved, in the northwest quarter of section 12, and confirmed the fee simple title in and to said premises in the heirs of the Weiths. In view of that decree plaintiff could not rely on the Rupert title as paramount as to the land in section 12.

It is, however, insisted by the plaintiff, that although he may not have paramount title, he has color of title, under which he entered into the actual possession of the premises, and continued in possession for seven successive years and paid all taxes assessed thereon, and as he was turned out of the possession by defendant after the Statute of Limitations had run in his favor, he is entitled to recover the premises under that title.

The Weiths owned the south-west quarter of section 2, which joins the north-east quarter of section 11, and corners with the north-west quarter of section 12. There was a vein of coal in

the south-west quarter of section 2, and the Weiths, soon after obtaining a deed of the premises in question, went upon the land and opened a coal mine through a shaft or entry running under the road, at or near the corner of the three sections. After making the entry they continued to operate the mine until their death, and after their death their representatives operated the mine until the spring of 1865, when the mine took fire, and was destroyed to such an extent that it was abandoned. From that time onward the premises involved were not occupied or used in any manner by the representatives of the Weiths, nor was there any claim or possession set up under that title from the spring of 1865 until 1885. So far, therefore, as the Weiths, or those claiming under them, are concerned, the possession of the premises was abandoned for a period of about twenty years, before any attempt was made by any person claiming under their title to repossess the premises. Ansel Haines originally bought the east half of the north-west quarter of section 11, and the north-west quarter of section 12, of Howarth, who then lived upon it. Upon making the purchase he moved on the land, and lived on it from 1848 to 1853. A part of the land was in cultivation, and most, if not all, of it fenced. Haines sold and delivered possession to Rupert and Gill. It is apparent from the evidence that Rupert, from the time he purchased, went into possession of all the land except that part occupied by the Weiths for their coal mine, and after the Weiths abandoned the mine, in 1865, he went into possession of that part of the land occupied by them, and continued to occupy the same until his death, in 1877.

As to the payment of taxes we think the evidence shows that Gideon H. Rupert paid the taxes assessed on the land each year from 1857 to 1875, both years inclusive, as shown by the following tax receipts: One dated February 13, 1858, for taxes of 1857, on N. W. qr. 12, 7, 7, 79 acres, and also one of same date for tax on east half N. E. 11, 7, 7, both paid

by Gideon H. Rupert; also, one dated February 14, 1859, for taxes of 1858, on east half N. E. of 11, N. W. of 12, 7, 7, paid by G. H. Rupert; also, one dated January 16, 1860, for taxes of 1859, on east half N. E. of 11, 80 acres, fractional N. W. 12, 7, 7, paid by G. H. Rupert; also, one dated February 2, 1861, for taxes of 1860, on east half N. E. 11, 7, 7, 80 acres, fractional N. W. 12, 7, 7, $78\frac{9}{100}$ acres, paid by G. H. Rupert; also, one dated February 8, 1862, for taxes of 1861, on east half N. E. 11, 7, 7, 80 acres, fractional N. W. 12, 7, 7, $78\frac{9}{10}$ acres, paid by G. H. Rupert; also, one dated April 6, 1863, for taxes of 1862, on same lands, paid by G. H. Rupert; also, one dated February 6, 1864, for taxes of 1863, on same lands, paid by G. H. Rupert; also, one dated January 2, 1865, for taxes of 1864, on same lands, paid by G. H. Rupert; also, one dated April 7, 1866, for taxes of 1865, on same lands, paid by G. H. Rupert; also, one dated April 1, 1867, for taxes of 1866, on same lands, paid by G. H. Rupert; also, one dated January 18, 1868, for taxes of 1867, on same lands, paid by G. H. Rupert; also, one dated January 1, 1869, for taxes of 1868, on same lands, paid by G. H. Rupert; also, one dated January 26, 1870, for taxes of 1869, on same lands, paid by G. H. Rupert; also, one dated January 28, 1871, for taxes of 1870, on same lands, paid by G. H. Rupert; also, one dated January 18, 1872, for taxes of 1871, on some land described as south and west sides, less railroad, paid by G. H. Rupert, east half N. E. 11, $73\frac{49}{100}$ acres, and fractional N. W. 12, described as less railroad, and as $76\frac{69}{100}$ acres; also, one dated January 28, 1873, for taxes of 1872, on same lands, described as last above, paid by G. H. Rupert; also, one dated January 20, 1874, for taxes of 1873, on same lands as last above, paid by G. H. Rupert; also, one dated January 27, 1875, for taxes of 1874, on same lands as above, paid by G. H. Rupert; also, one dated January 25, 1876, for taxes of 1875, same description of lands as above, paid by G. H. Rupert.

Here was a period of ten years, from 1865, when the Weiths abandoned the premises, to 1877, that Gideon H. Rupert, plaintiff's grantor, was in the actual, adverse possession of the premises, and paid all taxes thereon. This, with color of title, under the uniform decisions of this court, would authorize a recovery. The important inquiry then is, whether Gideon H. Rupert, at the time he paid taxes and held possession as stated, had color of title, as the three must unite to authorize a recovery.

The deed from Ansel Haines and Jonathan Haines, of April 12, 1853, to Rupert and Gill, and the deed of November 17, 1855, from Gill to Rupert, were sufficient to place color of title in Gideon H. Rupert, and had nothing transpired to divest such title, we would feel inclined to hold that under such color and the payment of taxes and possession we have heretofore mentioned, a recovery might be had. But in September, 1869, by the decree of the circuit court, in the partition suit heretofore mentioned, Gideon H. Rupert was divested of all title to the land involved, in the north-west quarter of section 12, and his payment of taxes and possession after that date were under no title whatever, as the decree had deprived him of title. Suppose that Rupert had conveyed the premises to a third party by quitclaim deed, and after making such deed had continued in possession and paid taxes for seven successive years, under such circumstances would he be entitled to claim the benefit of the Statute of Limitations? In *Heacock* v. *Lubuke*, 107 Ill. 396, we held that after a conveyance a party could not claim the benefit of the statute. The same principle has been laid down in *Harris* v. *Hardeman*, 27 Texas, 248, and in *Gower* v. *Quinlan*, 40 Mich. 572. By the decree the title of Rupert was in effect extinguished, and after that time he occupied as one holding the possession of land under no paper title. So far, therefore, as the land in section 12 is concerned, color of title was not established.

The German Coal Company, as appears from the record, on the 28th day of October, 1885, instituted proceedings in the county court of Peoria county to condemn a part of the premises in question under the Eminent Domain law, and after obtaining a judgment of condemnation, went into possession, and it is insisted that the company is estopped to deny plaintiff's title. Had the petition filed by the company alleged that the plaintiff was the absolute owner of the premises, and upon such allegation obtained a judgment and entered under an order or the process of the court it may be, after the order and judgment of the county court was reversed and held to be unwarranted, that the coal company might have been estopped from denying the title of plaintiff. But the petition did not so allege, nor does it appear that defendant entered under the order or process of the court. The petition merely alleged "that the land is owned and occupied by John Rohn, Adam Sholl, George Tudor, Joseph Elliott, James Sherrott and William McMullen, or some one or more of them." It was then alleged that John Rohn had granted petitioner the right of way over the land, and that petitioner can not agree with the parties on the land as to the amount of damages. The petitioner never demanded possession under the order, nor was any writ ever issued to place petitioner in possession. After the judgment was rendered and petitioner had filed a bond, petitioner went upon the land, without hindrance from any quarter, and commenced work. Under such circumstances we perceive no ground upon which the doctrine of estoppel can be invoked. Whether plaintiff might have recovered the possession in an action of forcible entry and detainer, does not arise, as no such action is involved here.

We now come to a consideration of the land in section 11. The land involved, in section 11, consisted of one acre in the north-east corner of the east half of the north-east quarter of section 11. The east half of the north-east quarter of section

11 was conveyed from Ansel Haines down to Gideon H. Rupert in the same manner and by the same deeds of conveyance as the north-west quarter of section 12. On the 21st day of June, 1883, the executors of the estate of Rupert conveyed to Erwin Kuhn, and on the 4th day of August, 1885, Kuhn sold and conveyed to the plaintiff. It turned out, however, on the trial, that on the 23d day of November, 1863, Gideon H. Rupert conveyed to John Wolfer one hundred and fifty-six square rods of land in the north-east corner of said section 11, embracing the land in controversy. The evidence, however, showed that John Wolfer, soon after obtaining the deed, left the country, and has not since that time been heard from, and plaintiff claimed that before Wolfer left, he conveyed the land to his mother, Mary Wolfer, who resided upon it after he left, and that the deed, together with other papers, was burned in the home of Mrs. Wolfer, which was destroyed by fire in 1866. Evidence was introduced tending to sustain this view, but whether the evidence was sufficient to sustain that theory we do not find it necessary to determine.

On the 14th day of July, 1866, Mary Kuhn, formerly Mary Wolfer, and Erwin Kuhn, her husband, conveyed the land by deed of that date back to Gideon H. Rupert. This deed, although it did not convey the fee, was good color of title, and if Rupert, under it, held possession of the land and paid all taxes thereon for seven successive years, he then had such a title, under the act of 1839, as would authorize a recovery against any person who might intrude upon his possession. The plaintiff introduced tax receipts showing payment of taxes by Rupert from April 1, 1866, to January 25, 1876, a period of more than seven successive years. The court held the tax payment established by the evidence, and we think properly. The receipts, owing to the manner in which the land was described or the description by which it had been assessed, were not as plain as might have been desired, but it is apparent, from the evidence, that the taxes on the land standing in the

name of Rupert were paid by him, and that is all that could be required.

It is said the proof fails to show possession of this acre tract by Rupert, after Kuhn and wife conveyed to him. Kuhn and wife lived on the land until a short time before they conveyed. Their possession was transferred to him, and in the absence of proof to the contrary the presumption would arise that he continued in the possession as his grantors had done before. But aside from this, Rupert was in possession of the larger portion of the east half of the north-east quarter of section 11, and under the well-known rule that actual possession of a part of a tract of land under a deed for the whole tract will be regarded as possession of the whole, the possession was fully established.

The plaintiff having thus established color of title, seven successive years' payment of taxes, and seven years' possession of the land in section 11, we think he was entitled to recover on that title. The coal company failed to establish any title or right of possession under which it could hold the possession of the land in section 11. Whatever title the Weiths originally acquired to this land had expired by the express terms of the deed under which they purchased.

In the deed from Ansel Haines to George and Conrad Weith will be found, first, a description of the land in the north-west quarter of section 12; second, the following: "also the privilege of mining for coal under the following described parcel of land, to-wit:" Then follows a description, by metes and bounds, of the one-acre tract in section 11, involved in this litigation. Much reliance was placed by counsel for the defendant in the above clause; but the court, as we understand the ruling, held, that after the coal was all mined from the one-acre tract, the Weiths and their grantees had no further rights under that clause of the deed. We think that construction was correct. There is nothing in the language used in the deed from which the conclusion can be reached that any

right was given to pass from the north-west quarter of section 12, over the acre tract in the corner of section 11, to the mine owned by the Weiths, in section 2. Had the grantors intended to confer upon the grantees a perpetual license to pass over or through the acre tract from section 12 to section 2, different language would have been used. A clause in a deed or contract conferring the privilege of mining for coal under a certain acre tract, can mean nothing more or less than the right is conferred to enter into the tract named and remove the coal, but when the coal is all removed, the right conferred will cease to exist.

The judgment of the circuit court will be affirmed. The costs of this appeal will be equally divided between the parties.

*Judgment affirmed.*