## THOS. BECK & SONS v. ECONOMY COAL COMPANY.

**Mines and mining:** CONTRACT OF LEASE: CONSTRUCTION. The rule
1 that a clear expression of one thing is the exclusion of another applies to the construction of contracts as well as statutes.
In this action the plaintiff leased to defendant for a term of years the coal under a certain tract, with the exclusive right to mine and remove the same and to erect underground entries, railroads, etc., for that purpose, and also permitted defendant to remove coal mined from adjoining land through the shaft located on plaintiff's premises, upon paying plaintiff a certain royalty therefor. The lease also contains a grant to use a portion of the surface upon which to sink shafts, erect building, etc., with a provision that if before the expiration of the lease the coal of the leased premises should be exhausted, defendant might still use the surface for mining coal from adjoining lands upon paying a certain rental per acre, and further gave defendant the right to remove the coal from the land leased to plaintiff through a shaft located on other ground. *Held*, that the above rule would not permit the defendant under the express terms of the contract to use the entries under

plaintiff's land to mine coal from other land through a shaft not located on plaintiff's land.

**Same:** INJUNCTION. Under the provisions of the above contract the plaintiff is held entitled to an injunction restraining the defendant from using the entries under plaintiff's land for the purpose of mining coal from other lands, which was taken out at a shaft not located on the premises leased from plaintiff.
McClain and Evans, JJ., dissenting.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

TUESDAY, OCTOBER 25, 1910.

SUIT in equity for an injunction and an accounting under a mining lease. Trial to the court. Decree dismissing plaintiffs' petition. Plaintiffs appeal.—*Reversed and remanded.*

*A. H. McVey* and *Jos. D. Laws,* for appellants.

*W. N. Jordan,* for appellee.

DEEMER, C. J.—Plaintiffs, being the owners of an eighty-acre tract of land, entered into a contract with the defendant whereby they "leased to the party of the second part (meaning defendant) all the merchantable coal that is in or may underlie the surface of the land for the period of twenty years from and after the 24th day of May, 1904, unless otherwise terminated as herein provided." The instrument also granted the party of the second part the exclusive right to test, open, mine, and remove said coal, and further granted it the right to erect underground entries, railroads, and all necessary buildings and fixtures necessary to facilitate the mining and removal of said coal from said land with the right to remove said buildings and fixtures at the expiration of the lease, or whenever it shall

become impracticable to further mine coal from said premises at a profit. The royalty or rental was to be upon each ton of coal mined from the land during the continuance of the lease; and a minimum guaranteed royalty was also provided on coal mined under the lease. Defendant agreed to commence the operation of said mine and the removing of said coal within five days from the execution of this lease, "and shall proceed in good faith regularly in the operation of said mine and the removing of said coal from said premises, and to remove all of the coal from said leased premises within twenty years from date of the beginning of this lease, at which time this contract and lease shall absolutely terminate and cease: Provided, however, that if notwithstanding the regular and faithful operation of the said mine during said twenty years, at the termination of said period the said coal beneath said premises shall not yet be fully exhausted, then and in that event the party of the second part shall have the right to a renewal of this lease for an additional period of ten years, or such lesser period as may be necessary to completely remove all of said coal." It was also agreed that defendant shall furnish to the party of the first part upon request of said first party a plat showing the extent and plan of said mine, which said plat shall be furnished semiannually thereafter upon the request of the party of the first part, showing the changes to date.

That the parties had in mind the possible use of the entries and shafts for taking coal from other lands is clear from the following stipulations made between them which we here quote from the lease itself:

It is further agreed that the party of the second part shall have the right to remove coal mined from adjoining land, not embraced in this lease, through the shaft located on the premises leased herein, in which case the party of the second part shall pay to the party of the first part a royalty of one percent per ton for all coal so mined.

and removed.   It is further agreed that the party of the
second part shall have the use of the surface of five acres
of land during the continuance of this lease, free of charge,
upon which to sink shafts, erect buildings, railroads, etc.,
and also a right of way over said leased premises for rail-
road tracks and switches, the said right of way to be
included in said five acres, unless otherwise agreed upon;
except, in case before the expiration of this lease the coal
under said leased premises should become exhausted or mined
out, the party of the second part should wish to continue
the use of the surface occupied by his said tracks, shaft,
buildings, etc., for the purpose of mining coal from ad-
joining leased lands, then and in that event the party of
the second part shall have the right to the use of the
surface of so much land as is necessary for that purpose,
and shall pay to the party of the first part for said use
the sum of ten dollars ($10.00) per acre during the con-
tinuance of this lease, in addition to the one percent royalty
aforesaid.   It is further agreed that the party of the second
part shall have the right to remove the coal from the
premises leased herein through a shaft located on any
other land.

That the contract may be better understood we also
quote the following:

It is further agreed that the party of the second part
may sink such air and water shafts as may be necessary
to properly operate said mine on said leased premises, using
no more land than is absolutely necessary to such purposes,
and causing as little inconvenience as possible to parties
occupying the surface of said premises, and that the water
removed from said mines on any part of said property
shall be carried to some natural drainage by means of
ditches and not permitted to overflow and collect on said
land, and the party of the second part shall have the right
of way over the surface of said leased premises to said
air and water shafts, doing as little damage as possible.   It
is further agreed that if the party of the second part shall
in any manner fail to comply with the terms and conditions
of this lease, or shall fail to pay the sums of money falling
due under the lease promptly when due, or in case there is

a failure to operate the said mine for a. period of twelve months at any one time, then and in that event this lease may be terminated at the option of the party of the first part upon sixty days' notice in writing of their intention so to do: Provided, however, that the failure to operate said mine for a period of twelve months at any one time shall not work a forfeiture of this lease in case such failure is due to unavoidable causes or strikes. It is further agreed that in the event of the coal becoming exhausted or too thin, or not sufficient in quantity to warrant its being mined at a profit, or through any other cause it be made to appear that it is not practicable to continue to mine the same without loss, the party of the second part may terminate this lease upon sixty days' written notice to the party of the first part of such intention.

At the time this lease was made, defendant had leases for mining coal from a tract of one hundred and sixty acres adjoining plaintiff's land on the west and on other tracts of land adjoining it on the north and east, and was operating a shaft located about the middle of the tract to the west from which an entry had been worked through to the north for the purpose of removing coal, the last of these extending over upon plaintiff's land about twenty feet beyond the western boundary, and this entry had been used for bringing coal from other entries to the north on land leased by defendant. When the lease in question was made, plaintiffs knew that defendant had thus encroached upon their land with its north and south entry, and they soon after exacted from defendant a settlement by way of royalty for the coal which had been removed in running this entry before the lease took effect. The defendant proceeded after the lease was executed to extend its main entry to the eastward, mining the coal under plaintiffs land, and continued to use the north and south entry for the purpose of bringing through it coal from the other land which it was mining to the north. This continued use of the north and south entry was known to the plaintiffs, who on two

different occasions insisted on a right to have one percent per ton royalty on all coal carried through such entry from other land, but this alleged right was on each occasion denied by the defendant. The defendant did not open a shaft on plaintiffs' land, as it had a right to do, but proceeded under the privilege given to it in the lease to remove the coal from plaintiffs' land through the shaft which it had already constructed and was using on the tract of land to the west. After operations had thus been continued under the lease for more than two years, plaintiffs brought this action, asking, first, an accounting for royalty at the rate of one percent per ton on all coal thus transported through the north and south entry on their land from other land, and for an injunction to restrain defendant from transporting through said entry any coal from land not belonging to the plaintiffs. On the trial it was stipulated that the coal taken through this entry from other land amounted to 34,047 tons. It is conceded in argument that no damage whatever had resulted or was likely to result in the future from the transportation of coal from other lands through the entry on plaintiffs' land, and it is not claimed that the defendant had been in any way remiss in its duty as to mining coal from plaintiffs' land.

Whether the lease or contract from which we have quoted be treated as a lease or a grant is not necessary now to determine, nor is it necessary to determine what the rights of the parties might have been with reference to the use of the entries for mining coal from other lands had there been no express agreement with reference thereto. These questions are difficult of solution, and upon which we might not be agreed. No matter what the nature of the contract or the implied rights of the parties under the lease or grant which makes no reference to the use of the entries for mining coal from other lands, these things are clearly the subject of contract, and, if the parties do

contract with reference thereto, their rights are to be deter-
mined from the terms of their agreement.

Recurring to the contract in this case, it will be
observed that there was a specific grant of the right to
construct underground entries, etc., for the purpose of
mining and removing the coal from said
leased land. This negatived another use
unless specifically granted. That other uses
might be claimed was recognized, and these were expressly
set out as before stated; and none of these gave defendant
the right to use the entries, railways, etc., except for specific
purposes and upon a named consideration. These express
grants clearly negatived any implied one which might other-
wise arise under the maxim: *Expressio unius est ex-
clusio alterius.* The expression of one thing is the ex-
clusion of another. See *Hearne v. Marine Ins. Co.,* 20
Wall. 493 (22 L. Ed. 395); *Thomas v. West Jersey Co.,*
101 U. S. 82 (25 L. Ed. 950). This rule, as will be
observed, is applicable to contracts as well as to statutes,
and it seems is quite controlling here. The grant was
for an express purpose, and it confined the use of the
entries and tracts to these purposes. All others were by
necessary implication excluded. Defendants find no express
grant of a right to use the entries on plaintiffs' land for
the purpose of mining coal from other mines save as it
appears in the lease itself, and, had they used them for
the purposes expressly provided in the lease, they would
have had to pay for such use. Even had they made such
use, they would have been compelled to go to considerable
expense before they could have availed themselves of the
rights. Not only was there a limitation by express grant
which of necessity excluded any other use, but the parties
were so particular about the matter that they inserted an
express provision in the lease authorizing defendants to
mine the coal leased them by plaintiffs through shafts
located on other lands. This indicates that the right to

*1. MINES AND
MINING: con-
tract of lease:
construction.*

use of entries, etc., was intended to be, and was in fact, limited to the express grant of mining and removal of coal "from said land," being the land leased from plaintiffs. The use of the entries for any other purpose was thereafter expressly limited to the use thereof through a shaft located upon the premises leased; thus again excluding the general use thereof for mining coal from other lands. This could not be made clearer than it was, save by inserting what is necessarily to be inferred, that defendants should not have the right to use the entries, etc., for the removal of coal from adjoining lands. Applying the ordinary rules for the construction of contracts and grants, it seems that defendants had no right to use the entries on plaintiffs' land for mining coal from other lands save as provided in the lease, and, as the lease did not permit it save it was mined through a shaft on plaintiffs' land and then only for a compensation to be paid, they had no right to use the entries as they were doing when this action was commenced. This case is ruled by previous decisions. *Moore v. Price et al.,* 125 Iowa, 353, is very like the instant case, and we there said:

It is clearly apparent from the terms of the contract itself that no right was therein given the defendants to use the shaft or entry on the plaintiffs' land for the purpose of mining their own land adjoining it. The last clause of the contract in particular expressly negatives such intention, for it provides for the removal of the buildings, roads, and shaft, and for the filling of the latter whenever the coal sold to the defendants shall be excavated, or they shall cease to operate and abandon the mine. The defendants are bound by this contract, and have no greater rights than are therein given. *Peters v. Phillips,* 63 Iowa, 550; *Kraft v. Welch,* 112 Iowa, 695; *Madison v. Garfield Coal Co.,* 114 Iowa, 59; Barringer and Adams, Mines and Mining, pages 584, 586, 607; *Sholl v. German Coal Co.,* 139 Ill. 21 (28 N. E. 748); *Findley v. Armstrong,* 23 W. Va. 113. It is undoubtedly true that mineral underlying the surface of the ground is subject to absolute con-

veyance, and that one person may own the mineral and another the surface. *Lillibridge v. Lackawanna Coal Company,* 143 Pa. 293 (22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544).

*Peters v. Phillips et al.,* 63 Iowa, 550, is another mining case where the lessee was attempting to use the leased property for mining coal from other lands, and we there said:

It does not appear from the contract that the plaintiff leased his land to the defendants to be used by them to establish the place for the mining operations on the surface of the earth, and from thence sink shafts and dig drifts and entries into other lands, and use the plaintiff's land as the place to locate the machinery and deposit the waste from the coal mined on the land of others. By the allegations of the petition, this is just what defendants are doing. It needs neither argument nor authority to demonstrate that defendants have no such rights under the lease, and that the plaintiff is entitled to an injunction to prevent further unauthorized use of his land for that purpose. If defendants desired to use the land of plaintiff for this purpose, they should have made a contract to that effect.

In *Kraft v. Welch,* 112 Iowa, 696, this court said:

The designation in the lease of the purpose for which the premises may be used amounts to a covenant not to use them for other purposes. See *De Forest v. Byrne,* 1 Hill (N. Y.) 43, which was an action at law for breach of covenant in a lease of premises 'to be occupied as a lumber yard' by erecting buildings thereon which subjected the premises to the payment of a water tax, which the plaintiff was compelled to satisfy, and the court says: 'This was an express covenant to occupy the premises as a lumber yard. . . . The erection of the buildings therefore was a wrongful act, and, defendant having thereby imposed a permanent charge upon the plaintiff's property which he refused to pay off, the plaintiff was forced to discharge it to release the property, and has a claim against the defendant for restitution.' And this statement of the

law is quoted with approval in *Gillian v. Norton,* 33 How. Prac. (N. Y.) 373.    There could have been no occasion to specify in the lease now before us the purposes for which the premises were to be used, unless it was intended that this specification should be restrictive.    All other uses were by necessary implication prohibited.    *Farwell v. Easton,* 63 Mo. 446.

In *Madison v. Garfield Co.,* 114 Iowa, 56, the decision is made to turn upon the proposition that the lease was "for the purpose of mining coal," and not as in the instant case for the mining of the coal from the land itself, and even upon that proposition Justice Ladd dissented.

II.    There can be no question of plaintiffs' right to an injunction, although it has failed to show any damages growing out of the improper use of the entries.    An un-broken line of decisions sustains such a remedy.    There are *Kraft v. Welch, supra; Peters v. Phillips, supra; Robbins v. Archer,* 147 Iowa, 743; *State Security Bank v. Hoskins,* 130 Iowa, 339; *Lemmon v. Guthrie Center,* 113 Iowa, 36.    The trial court was right in denying the accounting and in dis-allowing damages; but it should have entered an injunc-tional decree as prayed.    The case will therefore be re-manded for a decree in harmony with this opinion.—*Re-versed* and *remanded.*

2. SAME: injunc-tion.

McCLAIN, J. (dissenting).—In avoiding any expres-sion of opinion as to the rights of the lessee under a mining lease, in the absence of express agreement, to use the entries on the leased land for the purpose of trans-porting also coal mined on other land, and basing the decision entirely on an interpretation of the lease, I think the majority begs the whole question as to plaintiffs' right to an injunction.    The lease can be interpreted only in the light of the law which is presumed to have been in the minds of both parties at the time the lease was made.

If by law the lessee of premises to mine coal therefrom, in the absence of any particular stipulation on the subject, has a right to use the entries on the leased premises for the purpose of transporting coal through them from other land so long as he does not in any way neglect his duties to the lessor nor cause him any damage, then, to entitle the plaintiff to an injunction in this case, it would be necessary to find some stipulation of the contract indicating the intention that defendant should not exercise the right which he would otherwise have under a coal mining lease.

In the few cases which have arisen involving this question the general concurrence of opinion seems to be that the lease of land for a long term for the purpose of allowing the lessee to mine a subterranean vein of coal or ore involving the construction and maintenance of entries through which the coal or mineral may be removed confers upon such lessee the right to use, during the term of the lease or so long as its provisions are complied with as to the leased premises, the entries properly constructed for removing coal or mineral from the land leased, also as a channel for the transportation of like coal or mineral from other land owned or leased by such lessee. *Lillibridge v. Lackawanna Coal Co.,* 143 Pa. 293 (22 Atl. 1035, 13 L. R. A. 627, 24 Am. St. Rep. 544); *Moore v. Indian Camp Coal Co.,* 75 Ohio St. 493 (80 N. E. 6); *Coal Co. v. Mining Co.,* 40 Ohio St. 559. A lease of the coal under a specific tract of land is more than a mere license to take coal from the land. *Knight v. Ind. Coal & I. Co.,* 47 Ind. 105 (17 Am. Rep. 692); *Collness I. Co. v. Black,* 6 App. Cas. 315, 335; *Austin v. Huntsville C. & M. Co.,* 72 Mo. 535 (37 Am. Rep. 446); *Consolidated Coal Co. v. Peers,* 150 Ill. 344 (37 N. E. 937); *Young v. Ellis,* 91 Va. 297 (21 S. E. 480). The nature of the right or estate which is granted by such lease may be difficult of definition under the law of estates as usually applied to

the surface of the land, but, at any rate, the lessee acquires a possessory right as to the vein or chamber from which the coal is to be removed, and is not liable to the owner of the surface for any use which is consistent with the purpose for which the right is created. *Eadon v. Jeffcock*, L. R., 7 Exch. 379. And see with reference to the nature of this right of possession *Plummer v. Hillside Coal, etc., Co.*, 104 Fed. 208 (43 C. C. A. 490); *Toothman v. Courtney*, 62 W. Va. 167 (58 S. E. 915). When, therefore, the plaintiffs leased to the defendant "all the merchantable coal that is or may underlie the surface of" the land described, they conveyed to defendant the right to take possession of the vein of coal underlying the surface and to use the space occupied by such vein of coal for mining purposes, and, had there been no other provisions in the lease, the defendant would have had the right, having constructed entries for taking out its coal from plaintiffs' land, to use those entries so far as no damage resulted to plaintiffs in transporting through them coal from other lands. What is there in the lease to negative by express or implied limitation the right thus arising from the nature of the lease itself? The further grant of the right "to erect underground entries, railroads, and all necessary buildings and fixtures necessary to facilitate the mining and removal of said coal from said land with the right to remove said buildings, fixtures, and railroads at the expiration of this lease," etc., purports to enlarge, and not to restrict. It relates to the right of removal of rails, buildings, and fixtures on the termination of the lease rather than to the use which the defendant is to make of the space occupied by the coal so long as the lease continues. The provisions for royalty on coal brought from other land and elevated through a shaft on plaintiffs' land evidently contemplates a transportation through entries on plaintiffs' land with the stipulation that, if defendant shall construct a shaft on plaintiffs' land and through it elevate coal brought from

other land, then compensation is to be made for the additional use of the surface for taking away the coal thus mined and depositing on the surface the additional waste. It seems to me this express provision for royalty on coal brought from other land only in the event of its being elevated through a shaft on plaintiffs' land negatives any claim that defendant was not to use the entries on plaintiffs' land for transporting coal from other land if it did not see fit to construct a shaft on plaintiffs' land; for it is expressly provided that the coal from plaintiffs' land may be taken out without the construction of such a shaft.

The majority would surely not contend that, if the lease of the coal underlying the surface of plaintiffs' land contained no specific provision authorizing defendant to construct underground entries, defendant would be without right to construct such entries for the purpose of taking out the coal. The right to use the space occupied by the coal in place for the purpose of carrying on mining operations is necessarily implied in the lease itself, and there is no express limitation on the extent to which such space may thus be used. Likewise the stipulation in relation to bringing coal through such entries from other land is limited to the payment of a royalty should such coal be elevated through a shaft on plaintiffs' land, and implies in my judgment no limitation on the right to transport coal from other lands through entries on plaintiffs' land if defendant does not see fit to elevate it through such shaft. I discover nothing in the lease inconsistent with the exercise of the right by defendant to make such use as he shall see fit of the space occupied by the vein of coal so long as such use is consistent with the mining operations necessarily implied in the leasing of the coal. There are no cases in this state which contravene this view. In *Peters v. Phillips,* 63 Iowa, 550, the question involved was as to the right of the lessee to continue to use a shaft on the land of the lessor for the purpose of removing coal

from adjoining land without complying with the terms of the lease as to the removal of the coal from the land of the lessor, and, as the court there indicates, it is self-evident that a lessee, having established a shaft on the land of the lessor for the purpose of mining coal from such land, can not continue to use it for taking coal from adjoining land after he has ceased to make use of it for the removal of coal from the leased premises. The primary purpose of the shaft, and the reason why the lessee was entitled to establish it and use such surface for the erection and maintenance of buildings, etc., without extra charge in the prosecution of its mining business, was the removal of coal from lessor's land, but there is nothing in the opinion of the court to indicate that, so long as this right of use continued, the lessee might not incidentally use the shaft for the purpose of removing coal from other land. However this may be, the use of a shaft and incident occupancy of the surface involves a burden entirely different from that involved in the use of the space underground occupied by the coal to be mined.

In *Moore v. Price,* 125 Iowa, 353, a continued possession and use of a portion of the surface of the land of the lessor for taking out coal from the adjoining land was also involved, and the view of the court was that the lessee had no right to thus use the surface for the dumping of waste and refuse incident to the removal of coal from other land. In this case the court says that the lessee may have absolute ownership in the mineral while the ownership of the lessor as to the surface continues, citing the case of *Lillibridge v. Lackawanna Coal Co.,* already referred to, and concedes for the purpose of the case that the lessee may have the absolute right to use the space which he has created by the removal of the mineral therefrom for such purposes as he may see fit. Certainly this case is no authority for holding that, so long as no use of the surface is involved, the lessee may not remove through

entries on the leased premises coal which is mined on adjoining land. In *Madison v. Garfield Coal Co.,* 114 Iowa, 56, the only question involved was the right of the lessee to continue to use the surface of the land for the purpose of taking out coal from adjoining land, and there is nothing in the majority opinion in that case nor in the dissent to indicate that the court had in mind any question relating to the use of entries on the leased premises.

Under the facts as it seems to me, there is no equitable ground for an injunction. The holding in *Kraft v. Welch,* 112 Iowa, 695, that unauthorized use of leased premises may be enjoined although no pecuniary damage to the lessor is shown, has no application here, for the reason that, as above indicated, the lessee was not making any use of the space occupied by the coal leased other than that contemplated by the lease; that is, a use for mining operations. If the lessee had been attempting to make some other use of these entries than that involved in the operation of a mine, such for instance as the storing of water or the raising of mushrooms, no doubt an injunction would be proper without regard to the question of pecuniary injury. It is pertinently suggested in *Coal Co. v. Mining Co., supra,* that "he who rents a farm adjoining his own may, during the lease, haul the produce of his own land across the leased land without any license from his landlord." Where the lessee is using the space occupied by coal or mineral in the leased land for the very purpose for which the lease is given and without injury to the surface, I can see no reason, so long as he is strictly complying with the terms of his lease as to the removal of coal from the leased land, why he should be enjoined from transporting coal from adjoining land through the entries which he has properly constructed for the purpose of taking out coal from the leased premises, and I therefore dissent from the conclusion of the majority that an injunction should have been granted in this case.

EVANS, J.—I join in the dissent.