W. R. LACEY, *et al.*, Appellants, v. S. C. NEWCOMB, Assignee, etc.

**Landlord and Tenant: WHAT IS LEASE.** An agreement which gives the exclusive right to mine coal, to use five acres of the surface for buildings, to build railroads upon and flow water over the land, and provides a royalty for coal mined, which shall be payable as rent, not to fall below a fixed amount per year, creates a relation which gives a landlord's lien for "rent."

**SAME: STATUTE OF LIMITATIONS.** An action for rent is commenced, under Code 2017 and 2018, when a claim for rent is deposited with the assignee of the tenant, within the time fixed by law for filing claims; and such filing waives no lien or priority.

**Assignments: PRACTICE.** When the assignee neglects to file a claim presented to him with the clerk, and the order of distribution, without notice to claimant, omits such claim, the assignee's report and said order should be set aside, and such claimant granted a hearing.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

FRIDAY, MAY 31, 1895.

Proceedings to set aside an order directing distribution of funds by assignee, and to establish plaintiff's claim to a first lien upon the fund.—*Reversed.*

*Gatch, Connor & Weaver* and *Lacey & Lacey* for appellants.

*Earle & Prouty* for appellee.

Kinne, J.—I. Plaintiffs and their assignor executed leases to the Mahaska Coal Company upon all

that part of section 1, in township No. 75, range 17 west, lying south of the Chicago, Rock Island & Pacific Railroad Company, of date October 16, 1889. One of these leases was executed by plaintiffs Laceys, and the other by C. Houtz and wife, since deceased. Plaintiffs are the owners of all rights under both leases. By agreement the two cases were consolidated and tried together. These leases are substantially the same, and are denominated by all of the parties thereto as leases. These contracts gave to the lessee the exclusive right to enter upon and mine coal underlying the above described land. By their terms they also granted to the lessee five acres of the surface of the ground for all uses connected with the mine. Said lessee also had the right to erect and maintain air shafts, vents, escapes, and pumps necessary to properly mine said land; also to use and occupy a right of way, not exceeding ten feet in width, to and from said shafts, vents, escapes, and pumps, and the necessary water ways to carry off the water from said pumps, and the right to construct such railways and switch tracks over said five acres as may be necessary in operating said mine and shipping coal therefrom. The leases were to continue for twenty years, unless the coal was sooner exhausted. The lessee agreed to pay as rent or royalty "in full for all the use of the surface of said land, and for all the privileges above specified, and for all coal mined," six and one-quarter cents per ton. It was also provided that the rent or royalty provided to be paid second parties for the rights thus granted shall not be less than two hundred dollars on the Houtz lease and one thousand two hundred dollars on the Lacey lease for each year. They also provided that the coal company should have a right of way across the land from the Rock Island Railroad track seventy-five feet in width. It was also provided that upon default made

by second party for more than sixty days after notice thereof in writing given said second parties or its assignees, the lease should, at the election of first parties, terminate, and that upon the termination of the lease from any cause the second parties would give peaceable possession of said premises within three months, but should have that time in which to remove its structures and machinery, by paying the royalties then due; that if second parties fail to surrender said possession as above stated first parties might recover possession by action of forcible entry and detainer. It was also provided that the contract should not be assignable or transferable without the written consent of all the parties thereto. It appears that under said contract the coal company entered upon said premises, built their railroad track and switch, which occupied about four acres of the surface of the ground. Under the leases the coal company had the right to use about nine acres of the surface of the land in addition to the right of air and water shafts, right of way to and from them, and the right to overflow the surface with water, and to deposit on the surface material taken from its shafts. That on December 3, 1890, said coal company, with plaintiffs' consent, leased all of its property to one M. B. Foster, subject to the leases heretofore mentioned. Said leases also contained a provision whereby Foster might purchase the rights and interest of the coal company. Said leases made provision for the payment of the rent which would be due plaintiffs. Afterward, and in December, 1890, the coal company made an assignment for the benefit of creditors to the defendant, Newcomb, who qualified as assignee during the same month. Prior to making said assignment the coal company had erected about one-half mile of railroad track upon said leased premises, and had possession of said right of way covered by the leases until the date of said

assignment. They had excavated underground road-ways through said land, drove entries in the same, and laid tracks, and operated said mine and land under the provision of said leases. They placed upon said land cars, mules, railroads, railroad irons, props, and timbers. That their personal property so placed there was of the value of over five thousand dollars. It also appears said company at the time of its assignment owed as rent under said leases one thousand and ninety dollars and eighty-nine cents, with interest thereon. The assignee notified plaintiffs of the assignment, and they, in January, 1891, and within the time provided by law, made out their claim for the above amount in proper form, claiming the sum due as rent under the leases. It appears that the assignee received the claim on January 10, 1891, and placed it among his papers, but for some reason (it would appear, from neglect of his duty) failed to mark the same "Filed," or to enter it upon his books, or to report it as a claim against the coal company. There is no pretense that plaintiffs' claim has been paid. It appears also that the leases from plaintiffs and their assignees to the coal company were especially valuable to the latter, as they afforded said company the means of reaching and mining coal under its own land. February 18, 1893, plaintiffs filed an amendment to their claim, in which they set forth the appointment of Newcomb as assignee; the fact that on December 15, 1890, he notified plaintiffs to file their claim; that they did so on January 10, 1891; that on May 2, 1891, said assignee filed a schedule of all claims that had been filed against said company; that by mistake or oversight the claim of plaintiffs was not included therein; that February 15, 1893, said assignee filed a report, showing that he had on hand for distribution the sum of five thousand two hundred and fifty-two dollars and fourteen cents; and that said distribution was made

without notice to plaintiffs, and their claims were not included in his report as claims against said estate, and not passed upon by the court. It also appears that two or three times after sending their claims to the assignee, plaintiffs wrote him about the same, but only once received an answer, and, that, to the effect that the claim had been filed; that they had no knowledge or notice of the hearing at the time the order was made distributing the assets of the estate, and as soon as they learned of said order they filed a motion to set aside and modify it, and for the allowance of their claim, and asked an order for its payment as a preferred claim for a landlord's lien on the fund. Notice of the hearing for an order of distribution was duly published. Under the order thus made the defendant the Valley National Bank and M. B. Foster became entitled either directly or by an assignment to all of the funds except two hundred and thirty-five dollars and four cents, which was ordered paid into court pending a determination as to who was entitled to it. To the granting of the motion and allowance of the claim the Valley National Bank filed objections, because the court, on April 14, 1893, had adjudicated all matters pertaining to the distribution of the fund upon proper notice; that plaintiffs' claim had not been filed with the assignee, and that they did not file such a claim claiming a landlord's lien; that, if plaintiffs had such a lien, it is barred by the statute of limitations; that plaintiffs have no lien upon the property. Evidence was taken, which disclosed the facts heretofore set out, and the court held that the contracts were for the sale of coal on lands therein described, and that the relation of landlord and tenant did not exist; that plaintiffs had no lien upon the property, and were not entitled to be paid out of the proceeds of the sale of the property, and not entitled to a landlord's lien; and a decree was entered accordingly. From this ruling and decree plaintiffs appeal. The

Valley National Bank is now the only defendant contesting plaintiffs' claim.

II. Conceding that appellants were legally entitled to a landlord's lien (a question which is hereafter discussed), are they entitled to have the report of the assignee opened, and to be heard, and to a modification of the order? Our statute provides that an assignee for creditors shall give notice of the assignment, and mail to each creditor a notice to "present" his claim "under oath to him within three months thereafter." Code, section 2119. It is his duty, at the expiration of three months from the time of first publishing notice, to report and file with the clerk of the court "a true and full list, under oath, of all such creditors of the assignor as shall have claimed to be such, with a statement of their claims," etc. Code, section 2120. Within three months thereafter any person interested may appear and file with said clerk exceptions to the claim or demand of any creditor, when, after notice, a hearing is to be had. Code, section 2121. If no exceptions are filed, the court is, from time to time, to order the assignee to make dividends. Code, section 2122. By section 2123 the assignee is at all times subject to the orders of the court. It is certain that the assignee did not comply with the positive requirements of the statute. He never filed plaintiffs' claim. He did not file with the clerk the full and true list of creditors, as the statute requires. And in other respects the assignee was derelict in his duty. Had he complied with the law, plaintiffs' claim would have been reported with those of other creditors. The original claim showed on its face that it was made for rent due under a claimed lease. It is fair to presume that, had the assignee complied with the law, the Valley National Bank would have taken exceptions to the claim then, as it does now. Notice would then have

required to have been given plaintiffs, and the ques·
tion of the priority of their claim determined.   The
failure of an officer of the court (the assignee) to do his
duty should not be permitted to prejudice whatever
rights the plaintiffs may have.   We think the report
and order made thereon, so far as these plaintiffs are
concerned, should be set aside, to the end that they may
have a hearing and determination of their claim.

III.   It is said, however, that the claim is barred,
so far as a lien is concerned.   True it is that under our
statute a landlord's lien exists "for the period of one
year after a year's rent or the rent of any shorter
period claimed falls due."   Code, section 2017.

So the lien is "effected by the commencement of
an action within the period above prescribed for the
rent alone."   Id. section 2018.   If it be true that plaint-
iffs could have instituted a suit by attachment to secure
the sum due them, still they were not bound so to do.
They had a right to ask relief as they did, under the
assignment, by seeking to have their debt satisfied out
of the property, or its proceeds held by the assignee.
In view of this fact, when was this action commenced,
so far as the running of the statute of limitations was
concerned?   In such cases the landlord's lien attaches
to the property of the tenant used on the premises, and
it is not defeated by the conversion of the property into
money by the assignee.   *Gilbert v. Greenbaum*, **56**
Iowa, 214 [9. N. W. Rep. 182].   Inasmuch, as by the stat-
ute heretofore referred to, the court is invested with full
power to adjudicate questions of priority between the
several claimants for the fund in its custody or control
in such cases, after such claims are filed and reported,
it seems clear that the depositing the claim with the
assignee as required by the statute is sufficient to
arrest the running of the statute of limitations.   *In re
Guyer*, 69 Iowa, 585 [20 N. W. Rep. 826]; *Perry v. Murray*,
55 Iowa, 416 [7 N. W. Rep. 49, 800]; *Wilson v. McElroy*, 83

Iowa, 593 [50 N. W. Rep. 55]. In the latter case it is held
that "the filing of the claim was the beginning of pro-
ceedings for its allowance." True, that was a claim
against an estate. Here we have a proceeding where,
when the claim was deposited with the assignee, the
parties were in court. In law they were asserting the
validity of their claim, and a right to have it allowed.
The property, being in the hands or possession of the
assignee, was in the possession of the court itself.
Having deposited their claim with the assignee as the
law directs, plaintiffs had put themselves in the atti-
tude of asserting their right to the sum claimed, as fully
as though they had instituted suit thereon in the usual
way. We conclude that depositing the claim, in such
cases, with the assignee, within the time fixed by law,
is the commencement of an action under the statute,
for all purposes touching the running of the statute of
limitations. By depositing the claim with the assignee,
plaintiffs waived no right which they may have pos-
sessed to have it established as a prior lien. *Nurse v.
Satterlee,* 81 Iowa, 494, 46 N. W. Rep. 1102. Therefore
the claim is not barred.

IV. We come now to a consideration of the main
question in this case, and that is as to whether the con-
tracts relied upon were leases in fact, and whether the
relation of landlord and tenant existed, so that
plaintiffs may avail themselves of the lien given
by law to landlords. This question has never
been decided in this state. We have fully set forth the
character and material provision of the contracts relied
upon by plaintiffs as establishing the relation of land-
lord and tenant. From them it will be seen that the
parties thereto undertook to create such relations in
the mining and carrying away of coal. Now, our stat-
ute allows a landlord a lien for "rent." Code, section
2017. Rent has been defined to be "a certain profit
issuing yearly out of lands and tenements." 12 Am. &

Eng. Enc. Law, page 730. "Rent is a compensation for
the use of lands demised, and is treated as a profit issu-
ing out of the land and tenements corporeal." 2 Woods,
Landl. & Ten. section 445. "A royalty payable upon
the stone or ore taken from the land, or upon brick made
from the earth thereon, is held to be a rent that may be
distrained for, although the soil is gradually exhausted,
and the royalty is not paid out of the renewing produce
of the land." 2 Woods, Landl. & Ten. section 445. "Rent
may be in the form of royalty." Gear, Landl. & Ten.
section 73. Anything corporeal or incorporeal may
be demised, including rights of way, timber, turpentine
trees, water rights, mining rights. Gear, Landlord &
Ten. section 3. We have held rent to be a "certain
profit, either in money, provision, chattels, or labor issu-
ing out of lands and tenements, in retribution or return
for their use." *Merrit v. Fisher,* 19 Iowa, 357. Now,
were the instruments under which plaintiffs claim
leases? In form there is no question that they were,
but were they such in view of the law? A lease "is a
contract by which one person divests himself of, and
another takes the possession of, lands or chattels for a
term, whether long or short." Woods, Landl. & Ten.
section 203. "A lease, at the common law, is a grant
of assurance of a present or future interest for life, or
for years, or at will, in lands or other property of a
demisable nature, a reversion being left in the party
from whom the grant or assurance proceeds." Platt,
Leas. 1. "A lease is a species of contract for the posses-
sion and profit of lands and tenements, either for life,
or a certain number of years, or during the pleasure of
the parties." 12 Am. & Eng. Enc. Law, page 976. "No
particular form of expression or technical words are
necessary to constitute a lease, but, whatever expres-
sions explain the intention of the parties to be that one
shall divest himself of the possession of his property
and the other shall take it for a certain space of time

are sufficient, and will amount to a lease for years, as effectually as if the most proper and permanent form of words had been made use of for that purpose." 12 Am. & Eng. Enc. Law, page 977. It seems reasonably clear from the above definitions that the instruments under which plaintiffs claim were leases, and the sum claimed was rent. Similar contracts to those in the case at bar have often been before this court, and always treated as being leases. *Peters v. Phillips*, 63 Iowa, 551 [19 N. W. Rep. 662]; *Flynn v. Mining Co.*, 72 Iowa, 738 [32 N. W. Rep. 471]; *Mickle v. Douglas*, 75 Iowa, 78 [39 N. W. Rep. 198]. It is true that in these cases the same questions were not involved as in the case at bar. It is contended by appellees that these contracts simply provided for the sale of the coal, and were not leases. We cannot concur in that view. It is said in *Haywood v. Fulmer*, 32 N. E. Rep. (Ind. Sup.) 574: "A lease may not only confer upon the lessee the right to the occupancy of the leased premises, either generally for the time limited, or for some specific purpose, or in some specific manner, or the right to occupy and cultivate and to remove the products of cultivation, but it may confer upon him the power to occupy and remove a portion of that which constitutes the land itself. Familiar and common examples of such leases are those authorizing the lessee to quarry and remove stone, to open mines and remove ores, minerals, mineral coal, etc., or to sink wells for procuring petroleum and natural gas. The power to execute leases for such purposes, and the fact that the instrument by which such interest in land is granted may be in all essential particulars a lease, will not be questioned, * * * Manifestly there can be no valid reason why a lease may not confer upon the lessee the right to remove a portion of the soil or of sand and gravel found upon the surface of the land leased, as well as to remove stone

or iron ore or mineral coal found either upon the surface or beneath it." In *Pendill v. Maas,* 56 N. W. Rep. (Mich.) 597, a question arose under a mining lease containing some provisions in common with those in the case at bar, between the lessor and the holders of a chattel mortgage upon certain personal property, which the lessor claimed a lien upon, and wherein the parties had stipulated that the property upon which the lien was claimed should become a part of the realty. It was held that the claim for unpaid rent was a lien thereon prior to the mortgage. It has been held that where a party leased land for the purpose of running a brick yard, and sold and carried away the same, the relation of landlord and tenant was created, and that royalty per thousand on bricks made from clay is a rent for which distraint will lie. So it is held that the right to take marl and clay for brick at a royalty and rent is a lease and distress will lie. In *McElwaine v. Brown,* 11 Atl. Rep. (Pa. Sup.) 453, the right to prosecute the work of finding and producing oil and minerals, including the erection of machinery and the building of roads, is a lease. In *Gilmore v. Iron Co.,* 22 Hun, 391, it is held that the right to mine ore at a certain price per ton is a lease. In *Reynolds v. Hanna,* 55 Fed. Rep. 799, it was held that no technical form of the words was necessary to create a lease, and that it was not material that the rent to be paid on the lease was called "royalty," which was perhaps the most appropriate word, where rental was based upon the quantity of coal or other mineral to be taken from the mine. It has been held that an agreement between the owner of a stone quarry and another person that the latter should work the quarry and sell the stone and pay one-fifth of the proceeds to the owner creates the relation of landlord and tenant. *Barry v. Smith,* 23 N. Y. Supp. (Co. Ct.) Rep. 129. The following cases may also be referred to as throwing some light upon this question: *Crane v. Patton,* 21 S. W. Rep.

(Ark.) 466; *Coal Co. v. Peers*, 37 N. E. Rep. (Ill.) 938. We are referred to several cases, chiefly decided by the supreme court of Pennsylvania, where it is claimed it is decided that such contracts as those at bar are held not to be leases. Among these are the following: *Hope's Appeal*, 3 Atl. Rep. (Pa. Sup.) 23; *Kingsley v. Iron Co.*, 23 Atl. Rep. (Pa. Sup.) 250; *In re Lazarus' Estate*, 23 Atl. Rep. 372. In none of these cases are the facts like those in the case at bar. It does not appear in any of them that the lessee acquired any interest whatever in any portion of the surface of the ground. It may be conceded that the terms of the leases in controversy were such as that the lessee, on mining the coal, became the owner of it. Nevertheless, as to such lands, the contracts were for the use of the land for a purpose for which it was valuable. They involved the right to use the land under the surface, to mine coal, to build and operate railroads, to make entries extending to the coal company's lands. As to the surface, the contracts granted the right to use several acres of ground to erect buildings, build and operate railroads, to flow water from the mine over the surface of lands, and other valuable surface rights. The rights granted as to the surface and below the surface are not separate, but go together.

It seems to us these contracts must be held to be leases, creating the relation of landlord and tenant. They confer present rights; they are assignable; they are for a fixed period; they provide for an annual rental independent of the mining of coal; the right to mine the coal is exclusive in the lessees for the period fixed in the lease; the rent or royalty is by express terms payable for all use of the surface of the land, as well as for other privileges specified, and for coal mined. In principle, the rights granted are not different from those where one leases a stone quarry or sand bed or the like. The fact that in the one case the article taken is on or near

the surface and in the other it is beneath the surface is no reason why in the one case privileges granted to take and carry away stone or sand should be held to be leases and in the other the right to mine and carry away the coal and the valuable surface rights granted should be held to constitute a sale of the coal, merely. In either case the sum stipulated to be paid, whether it be called "rent" or "royalty," is a profit issuing out of the use granted, even more so than it would be to use the land for agricultural purposes. In the latter case no perceptible quantity of the soil is taken, though the product is produced at the expense of utilizing the strength of the soil. In the former case a portion of the granted property is itself taken. This is in accord with the character of the grant, the use of the thing granted. The sum agreed to be paid is for the use of the land, upon and under the surface; and such use involves the taking away of the coal. This construction of these contracts is in harmony with their provisions, and in accord with usage touching such property; nor is it in contravention of the provision of the statute. We think the relation of landlord and tenant existed.

V. The motion of the appellee is not well taken, and must be overruled. We have considered all questions which we regard as material, and hold that the district court erred in its ruling.—*Reversed.*