**Lynn C. BALLSTADT, Appellee,**

v.

**IOWA DEPARTMENT OF REVENUE, Appellant.**

No. 84–1089.

Supreme Court of Iowa.

May 22, 1985.

Thomas J. Miller, Atty. Gen., Harry M. Griger, Sp. Asst. Atty. Gen., and Elizabeth A. Nelson, Asst. Atty. Gen., for appellant.

William L. Fairbank of Whitfield, Musgrave, Selvy, Kelly & Eddy, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, LARSON, and CARTER, JJ.

LARSON, Justice.

In 1981, the plaintiff, Lynn C. Ballstadt, purchased a new Peterbilt truck-tractor

from a Sioux City, Iowa, dealer. He immediately signed an "Independent Contractor Agreement" with BN Transport, Inc., Denver, Colorado, which provided in part that BN Transport "shall have the right to exercise exclusive possession and control over the leased [tractor] during the term of this lease."

The Iowa Department of Revenue attempted to impose a use tax on Ballstadt's purchase of the tractor under Iowa Code section 423.2 (1981). Ballstadt claimed the purchase was exempt under Iowa Code section 423.4(7) (1981), which covers purchases of vehicles which are leased for purposes of interstate transportation.

The issue was submitted to a revenue department hearing officer, who ruled against Ballstadt, concluding that he had retained so many incidents of control of the tractor that the agreement with BN did not actually constitute a lease within the meaning of the exemption statute. Ballstadt appealed to the director of the department of revenue who adopted the fact-findings and legal conclusions of the hearing officer and affirmed his proposed ruling.

Ballstadt then petitioned for judicial review, and the district court reversed, concluding that Ballstadt's agreement with BN did constitute a lease under section 423.4(7), and that the purchase of the tractor was therefore exempt. The department of revenue appealed. We reverse.

Iowa Code section 423.2 (1981), which was in effect at the time of this assessment, provided:

> *Imposition of tax.* An excise tax is imposed on the use in this state of tangible personal property purchased for use in this state, at the rate of three percent of the purchase price of the property. The excise tax is imposed upon every person using the property within this state until the tax has been paid directly to the county treasurer or the state department of transportation, to a retailer, or to the department as hereinafter provided. An excise tax is imposed on the use in this state of services enumerated in section 422.43 at the rate of three percent. This tax is applicable where services are rendered, furnished, or performed in this state or where the product or result of the service is used in this state. This tax is imposed on every person using the services or the product of the services in this state until the user has paid the tax either to an Iowa use tax permit holder or has paid the tax to the department of revenue.

(Except that the rate of tax has been raised from three percent to four percent, this section is virtually identical to its successor in the 1985 Code.)

Ballstadt's claim to an exemption is based on section 423.4(7), which exempts

> [v]ehicles, as defined in subsections 4, 6, 8, 9 and 10 of [Iowa Code] section 321.1 ... when purchased for lease and actually leased to a lessee for use outside the state of Iowa and the subsequent sole use in Iowa is in interstate commerce or interstate transportation.

Although the tractor in question was purchased for use in interstate commerce, no constitutional arguments have been raised. Moreover, the tractor involved is conceded to be a "vehicle" under the exemption statute. The sole issue on appeal, therefore, is simply whether the tractor was "leased" under the meaning of Iowa Code section 423.4(7), and thus exempt from the use tax.

In reviewing an administrative agency's interpretation of statutory provisions, we give deference to, but are not bound by the agency's determination. *American Home Products v. Iowa State Board of Tax Review*, 302 N.W.2d 140, 142 (Iowa 1981). A taxpayer seeking to come under a tax exemption statute has the burden of proving an entitlement to the exemption. *Kartridg Pak Co. v. Department of Revenue*, 362 N.W.2d 557, 561 (Iowa 1985); *Merged Area (Education) VII v. Board of Review*, 326 N.W.2d 310, 311 (Iowa 1982); *Iowa Methodist Hospital v. Board of Review*, 252 N.W.2d 390, 391 (Iowa 1977). In addition, tax exemption statutes are to be strictly construed,

*Merged Area,* 326 N.W.2d at 312, and all doubts concerning the right to the exemption are resolved in favor of taxation. *Id.* at 311.

With these principles in mind, we look to the issue raised here. The department of revenue contends the district court erred in: (1) construing the word "lease" in pari materia with several federal regulations; (2) failing to give effect to the word "actually" in the phrase "purchased for lease and actually leased"; (3) failing to give weight to the administrative interpretation of section 423.4(7); and (4) failing to construe the exemption statute strictly against the taxpayer.

The provision of the Ballstadt-BN agreement relied upon most heavily to establish the tax exemption is found at paragraph seven, which provides:

> Carrier [BN] shall have the right to exercise exclusive possession and control over the leased equipment during the term of this lease and said leased equipment shall not be used in revenue service except as carrier shall direct. Carrier shall assume complete responsibility for the operation of the equipment for the duration of the lease according to the terms and conditions as herein provided. Carrier shall have the right to sublease the leased equipment.

Ballstadt argues, and the district court agreed, that the words "actually leased" contained in section 423.4(7) must be construed in pari materia with interstate commerce commission regulations as to what constitutes a lease.

49 C.F.R. section 1057.2(e) provides the definition of a "lease" for interstate commerce purposes:

> *Lease* —A contract or arrangement in which the owner grants the use of equipment, with or without driver, for a specified period to an authorized carrier for use in the regulated transportation of property, in exchange for compensation.

Interstate Commerce Commission regulations further provide:

> *Exclusive possession and responsibilities* —(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 1057.12(d).

The district court concluded that a "lease" for purposes of section 423.4(7) should be the same as the one adopted by the Interstate Commerce Commission for transportation purposes, applying the principle of pari materia. Without agreeing that that principle is applicable at all when agency regulations, or even federal legislation, rather than another Iowa statute, are compared to the Iowa act being interpreted, the principle of pari materia is inapplicable here.

This principle requires that the statutes under consideration must relate to the same person or thing, to the same class of persons or things, or have identical purposes or objects. 2A Sutherland *Statutory Construction* § 51.03, at 467 (Sands. 4th ed. 1984).

Here, the federal regulations and the Iowa statute have totally different objects. The former are aimed at regulation of interstate transportation, and their specific object is to fix responsibility for operation of the vehicle in lessee-carriers "as if they were the owners of such vehicles." *See* 49 U.S.C. § 304(e) (1976). The Iowa statute, on the other hand, deals with matters of taxation, and neither the subject matter nor the object of the statute is the same as that addressed by the federal regulations. Interpretation of our exemption statute is thus not aided by reference to federal statutes or regulations.

In any event, it makes little difference whether we look to the I.C.C. definition of a lease or that at common law. A lease under the common law requires that a lessor transfer absolute control and di-

vest possession of the property. *See Baie v. Nordstrom,* 238 Iowa 866, 871, 29 N.W.2d 211, 214 (1947) ("Whatever is sufficient to show the intent of the parties that one shall divest himself of the possession, and the other come into it, for a determinate time, amounts to a lease."); *Lacey v. Newcomb,* 95 Iowa 287, 295–96, 63 N.W. 704, 707 (Iowa 1895) ("but, whatever expressions explain the intention of the parties to be that one shall divest himself of the possession of his property and the other shall take it for a certain space in time...."). The quality of that possession must be exclusive and good against all the world, including the owner. *See Riis v. Day,* 188 Mont. 253, 613 P.2d 696 (1980).

Significantly, divestiture of use and control is a prime requisite of the I.C.C. regulations as well. They require in part that "the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(d). Thus, the issue is not which of the two definitions is to be applied, but whether Ballstadt's actual arrangement with BN amounted to a lease under either of them. We do not think it did. The substantial degree of control over the vehicle retained by Ballstadt as "lessor" was so extensive that it made BN's "exclusive possession and responsibilities" provided by the parties' written agreement little more than paper rights. The department of revenue argues, and we agree, that this is not enough to satisfy the statute which requires that the vehicle be "purchased for lease *and actually leased.*" (Emphasis added.).

■ Ballstadt actually operated the tractor for as long as he owned it. (It was stolen in November 1981 and never recovered.) This, of course, is not unusual in the trucking industry. It is quite common for the owner of a truck, as we understand it, to actually operate it for a lessee. In this case, however, the owner of the vehicle retained virtual unlimited day-to-day control over it. Under their agreement, BN was to secure the loads for Ballstadt and was to be paid twenty-five percent of the gross revenue. The plaintiff received seventy-five percent. BN acted as a dispatcher and, under the agreement, attempted to interchange or triplease to avoid empty return hauls by Ballstadt. BN also provided overweight and oversized permits, filed the fuel and road tax reports, and secured licensing. BN was also required under the agreement to carry liability insurance. The agreement further required Ballstadt to maintain the equipment in accordance with all BN requirements, to hire only qualified drivers, and as noted, to furnish BN the "exclusive possession and control."

On the other hand, all of the expenses of BN in connection with the tax reports were to be borne by Ballstadt, including all fuel and road taxes, licensing and the cost of all overweight and oversized permits. In addition, while BN was required to carry liability insurance, Ballstadt was required to indemnify it for any loss or damage to third persons.

Ballstadt, in fact, retained most of the actual control of the vehicle. He determined all means and methods of performance of the transportation services, hired and fired drivers, set their wages and even chose the type of equipment which was to be "leased" to BN. In addition, he chose all routes to be used in transporting the commodities and was required to pay all maintenance and operating expenses as well as all employment taxes. Ballstadt, moreover, was required to assume all risk of damage to the equipment during the term of the agreement, to insure the equipment itself, and to hold BN harmless for loss or damage to the cargo. Ballstadt could turn down loads tendered by BN and he could refuse use of the equipment by any other person. He was also permitted to enter into "tripleasing" agreements (which did not directly involve BN) so long as BN had notice of the arrangement.

Ballstadt was required to hold BN harmless from any claims for wages, industrial accidents, workers' compensation claims and employment taxes. He was further required to file all state and federal income withholding and use tax forms and returns

and to provide the cost of all workers' compensation insurance.

The arrangement between these parties is similar to that which we considered in *Bruce Motor Freight, Inc. v. Lauterbach*, 247 Iowa 956, 965–66, 77 N.W.2d 613, 619 (1956). In that case, we concluded that

> [t]he arrangement between the plaintiff company and Allied Van Lines, Inc., although denominated a lease, amounts to a joint enterprise, in view of the fact that the plaintiff owns the equipment, operates it with its own employees, pays the cost thereof and receives the greater part of the gross revenue therefrom.

While the agreement here was denominated a lease and the parties claim a lease arrangement, we think it falls short of the exclusive use and control required by common law as well as the federal regulations relied upon by Ballstadt. The department of revenue correctly ruled that Ballstadt was not entitled to the exemption under section 423.4(7). We accordingly reverse the district court.

REVERSED AND REMANDED.