[Brasfield v. Burnwell Coal Co.]

# Brasfield *v.* Burnwell Coal Co.

## *Injunction.*

(Decided November 19, 1912.  Rehearing denied December 17, 1912
60 South. 382.)

1. *Mines and Minerals; Lease; Construction.*—A mining lease does not authorize the lessee to use the openings and apertures on one parcel to mine adjacent land, not owned or demised by the lessor, although the lease included two separate tracts of land; the lessee having no right except under the lease which would exclude the privileges sought to be invoked, by implication.

2. *Same.*—Where a mining lease demised the coal under three separate parcels, the fact that it was practicable and cheaper to mine one parcel by extending tunnels in the largest one through other lands will not authorize the lessee to mine all the coal under other land through which it extends its tunnel.

3. *Same; Right of Dumpage.*—The execution of a lease to mine coal under the land will not authorize the lessee to dump slate and refuse upon the land surface, unless the right is expressly granted.

4. *Injunction; Subject; Mining.*—Where the mining lease did not authorize the lessee to use the openings and apertures on the demised land to mine adjacent property not belonging to the lessor, the use of the openings for that purpose will be enjoined; the lessee took no rights except under the lease and the failure of the lease to grant that privilege impliedly negatives the privilege, thus raising an implied negative covenant which will be enforced by injunction, in analogy to specific performance.

APPEAL from Walker Chancery Court.

Heard before Hon. ALFRED H. BENNERS.

Bill by W. H. Brasfield as lessor, against the Burnwell Coal Company, as lessees, to enjoin the lessee from using surface rights and privileges claimed by it in conducting its mining operations.  From decree denying the relief prayed, complainant appeals.  Reversed and remanded with directions.

DAVIS & FITE, for appellant.  Defendant has no right under its lease from complainant to use the surface of the lands embraced therein for mining and shipping

[Brasfield v. Burnwell Coal Co.]

coal taken from lands embraced in the Bryan lease or any other parties.—*Hooper v. Dora Mining Co.*, 95 Ala. 239; *Pioneer Mining & Mfg. Co. v. Shamblin*, 140 Ala. 488; *Peters v. Phillips*, 63 Iowa 550; 19 N. W. 662; *Moore v. Price*, 101 N. W. 91; *Thos. Beck & Sons v.* *Economy Coal Co.*, 127 N. W. 1109; *Sholl v. German Coal Co.*, 28 N. E. 748. The provision in the lease from complainant allowing the use of the surface of his lands and "all privileges desired for the economical working of the mineral" therein, is a designation of the use of his surface only for mining the coal found therein and such designation excludes all other use, and his surface cannot therefore rightly be used by defendant in mining coal from adjacent lands.—*Kraft v. Welch*, 112 Iowa 696; 84 N. W. 908; *Leavers v. Cleary*, 75 Ill. Supreme Court Rep. 352. Except for the provision in the lease authorizing the use of complainant's surface for "making slate dumps" for material taken from complainant's lands, defendant would not have the right to use complainant's lands even for deposit of slate taken from the lands embraced in the lease from him.—*Hooper v. Dora Mining Co.*, 95 Ala. 238..

TILLMAN, BRADLEY & MORROW and JOHN S. STONE, for appellee. The party attempting to enjoin the breach of an implied negative covenant must show a substantial injury.—High on Injunctions, section 1137; 25 N. E. 795. The passageway formed by mining coal remains a part of the property of the appellee until the exhaustion of the mine or until the expiration of the lease.—24 Amer. St. Reps. 544; 64 S. E. 447; 80 N. E. 6; 153 Fed. 143; 72 Pa. St. 151. Courts of equity should consider the relative convenience and inconvenience to the parties unless the covenants themselves are clear and free from doubt and their violation is established,

and irreparable injury is likely to result in the event the breach is not restrained.—High on Injunctions, sec tion 1126; 69 Atl. 329; 52 Am. St. Reps. 297; 71 N. E. 335; 60 N. E. 790; 30 Am. Reps. 301; 206 U. S. 46 . See also the following authorities: *Clifton Iron Co. v. Dyc,* 87 Ala. 470; 1 High on Inj., Sec. 1106; *Tanner v. Lindell R. Co.,* 79 S. W. Rep. 155, 103 Am. St. Rep. 534; *Garkin v. Hull,* 72 N. Y. Sup. 1104; *Racks v. Curran,* 73 N. Y. Sup. 937; *Cleveland v. Martin,* 75 N. E. Rep 772, 3 L. R. A. (N. S.) 629; *Mansfield Co. v. Lane,* 152 Pa. St. 286, 25 Atl. 601.

MAYFIELD, J.—This appeal involves the question of the right of a lessor to enjoin the lessee from using the surface rights and privileges, acquired by virtue of a lease, in mining and marketing coal from lands other than those embraced in the lease.

The appellant, on January 9, 1904, leased certain lands to one Francis, for a period of 20 years, "or until the coal and minerals were worked out." Francis shortly thereafter transferred and assigned his interest in the lease and lands to the appellee, the Burnwell Coal Company, which company commenced mining and transporting coal from the lands in accordance with the terms of the lease, paying appellant, the lessor, therefor, five cents royalty per ton. This condition continued until the spring of 1909. During the greater part of this time an average of nearly 5,000 tons per month was taken from the lands. In February, 1909, the appellee, lessee, leased other (adjoining) lands, known as the "Bryan lands," from other parties, and began mining coal therefrom, using the openings, tipples, tracks, houses, commissaries, etc., which were constructed upon appellant's lands; and this suit was filed to enjoin such use of the surface rights of appellant's

lands. The chancellor enjoined the lessee from dumping slate and other refuse matter, taken from the Bryan lands, upon the lands of appellant, although the lease provided for so dumping such refuse matter taken from the lands leased; but the court declined to enjoin the lessee from using the surface rights acquired by the lease, in mining, transporting, and marketing the coal taken from the Bryan land. In other words, the trial court allowed the mining from the Bryan lands to proceed, except that the lessee was denied the right to dump slate and other refuse matter, taken from the Bryan lands, upon the lands of the appellant. The lands leased from appellant were not in one compact body, but were in three bodies, on one of which the mining was begun, the openings were made, the tracks laid, and the tipples, houses, commissaries, etc., erected; this tract consisting of 13 forties, or about 520 acres. Another body of appellant's land, consisting of about 120 acres, was south and west of that being mined; and was from three-fourths of a mile to two miles from the tract being mined. A part of the lands intervening between these two tracts was the Bryan land, consisting of 10 or 11 forties, leased by appellee, and from this was being mined the coal, the cause of this suit.

The reporter will make a diagram of these three tracts of land, showing their locations with regard to each other, and to the river.

The bill alleges that, before the mining operations were begun on the Bryan lands, the complainant was receiving from $300 to more than $600 per month, royalty from his lands, and that, after the lessee began to mine from the Bryan lands, the complainant received only a very small or nominal amount per month; it sometimes not exceeding $5 or $6.

[Brasfield v. Burnwell Coal Co.]

⊠ BRASFIELD LAND
▥ RIVER TRACT
▨ BRYAN LAND

The appellee attempts to justify its action in the use of the complainant's surface for the mining of the coal from the Bryan land by alleging that it is necessary and proper, in order to get to and mine the other tract of complainant's land, which is separated from his mined tract by the Bryan land. In other words, that in order to mine the 120-acre tract of complainant's land the lessee must mine out the Bryan tract, and thus extend its original opening, on the home tract of complainant, about a mile through the Bryan lands, to the outlying tract of complainant. The answer of the lessee sets up this matter as a justification, and there are filed a number of affidavits of experts as to the possi-

bility, practicability, of thus mining the smaller tract of complainant's land.

Without passing on the possibility, feasibility, or practicability of thus mining the smaller tract of complainant's land, we feel perfectly safe in deciding that the lessee acquired no such rights to thus mine the coal from the Bryan land by virtue of his lease of complainant's land; nor can this court so modify the lease, against the wishes and objections of the lessor, as to confer such rights. The lessor, of course, has no right to object to the lessee's going through the Bryan lands, to get to the smaller tract of complainant's land. That is no concern of the lessor. But he certainly has a right to object to the lessee's using the surface of his land in order to mine and market the coal in the Bryan land. He has made no contract to that effect, and it is not claimed that he has ever consented to such use of his lands. He did contract, agree, for the use of the surface of his land, in order to mine the coal in his land, but not to mine coal in other people's land. The lessee has no more right to use the surface of complainant's land for mining the coal from the Bryan land, than he would have to use the surface of the Bryan land for mining coal from the complainant's land. We do not think it possible to so construe the lease in this case as to confer the rights which the appellee contends for and is asserting over the protest of complainant.

But the more serious question is: Can a court of chancery enjoin the lessee from such use of the leased premises  The lessee has a right to use the premises as it is using them, for the purpose of mining and transporting the coal from the leased premises, but not that from other premises. It is therefore not a trespasser in the use of the premises for mining the coal from the leased premises. Does it become a trespasser in exceed-

ing its authority in using the leased premises for mining and transporting coal from other lands? If it is not a trespasser in the use of the premises, can a court of equity enjoin it from an improper or excessive use thereof?

The trial court enjoined the lessee from dumping the slate and debris from the Bryan land upon the complainant's land, but declined to enjoin it from other uses of complainant's land, the leased premises, as for the purpose of mining and transporting the coal from the Bryan land. It is difficult to see the reason for enjoining the lessee from the one use, but not the other. It is true that, but for the provision in the lease expressly authorizing the dumping of the slate, the lessee would have no right to so dump it, though it was taken from the leased premises. (*Hooper v. Dora Co.,* 95 Ala. 235, 10 South. 652) ; but the lease in question expressly authorized the dumping of slate taken from the leased premises. But it does not, either expressly or impliedly, authorize the dumping of slate taken from other lands; and probably it was for this reason that the chancellor enjoined the use for dumping purposes. The same reason, however, applies to the other uses of complainant's premises; but for the terms of the lease the lessee would have no right to use plaintiff's surface, for the taking of coal from the land. The lease, however, in terms authorizes it to so use the surface in taking the coal from the leased premises; but it does not expressly or impliedly authorize the use of the surface for taking the coal from other and different lands.

The lease contract is the source and the limitation of the lessee's rights and powers to use complainant's premises; and, as we have before said, it no more authorizes the use of complainant's surface for the purpose of taking and transporting coal from other and different

lands, than it authorizes the dumping on complainant's surface of the refuse matter taken from other lands. If the court has the right, power, and duty to enjoin the one use, under this particular lease, it has the right, power, and duty to enjoin the other. If the lease were silent as to the right of dumpage, then the rule would be different; but the lease in question is not so silent. It authorizes in terms the use for dumpage purposes.

While a court of equity will not specifically enforce a lease like the one in question, it will freely exercise its strong arm of injunction to prevent violations of negative and restrictive covenants, and thus in effect hold the lessee to a performance of the contract made, and not allow him to make another, and perform it, against the wishes of the lessor, though it may serve both his convenience and his profit.

That is to say, whenever the lessee is restricted by his lease to the use of the premises for a particular purpose or in a particular manner, a violation of such provision by the use of the premises for a different purpose or in a different manner will authorize a court of equity to enjoin such unauthorized use of the premises. High on Injunct. 436.

The remedy for past violations of contracts must usually be sought in courts of law; but the protection of existing contract rights, and the enforcement of specific covenants, are subjects of equitable cognizance. This equitable jurisdiction is based upon the necessity of thus protecting the legal rights of parties to contracts.

The power in courts of equity to thus enjoin the violation of negative agreements, or contracts not to do a particular thing, is closely akin to the remedy of specific performance. Injunction of the violation of negative covenants tends to specific performance. To this relief it is not at all necessary that the contract should con-

tain an express negative covenant against the act or thing sought to be enjoined. If from the nature of the contract such a negative covenant is necessarily presumed, or may be fairly and reasonably implied from the other express covenants, then the court will protect the legal rights of the parties to the contract, by enjoining the violation of such implied negative covenant, as if it were an express one.

Mr. High, in his work on Injunctions (volume 2, p. 1117, § 1134a), states and illustrates the rule as to implied negative covenants as follows: "It is not essential to the granting of injunctive relief that the contract in question should contain an express negative covenant against the commission of the act sought to be restrained, where, from the nature of the contract and of the obligation assumed by the defendant, such a covenant may be fairly and reasonably implied, or where the express covenant, although affirmative in its form, is prohibitive in substance. Thus, where defendant, a consumer of electricity, had agreed to take all the electric energy required for his premises from the defendant company for a period of not less than five years, it was held that, although he was under no obligation to take the power at all if he did not so choose, yet, when he did employ such power, it must be taken from the plaintiff exclusively, thus fairly implying a negative agreement not to take it from any other person, and an injunction was accordingly granted to restrain the breach of such negative covenant."

Thus in the case at bar, while there is no express covenant that the lessee will not use the lessor's surface for the mining of coal from other lands, we think there is a necessarily implied one to that effect. It is certain beyond doubt that the lease confers no authority, express or implied, to use the leased premises for mining

coal from other lands, and, if the lease confers no authority to so use the premises, the lessee confessedly has none, because it is his sole warrant and authority for using the premises.

The following cases construed coal mining contracts and leases in many, if not in all, respects like the one here under consideration, they being also similar in circumstantial setting to the case at bar; and we shall quote from these decisions the portions we deem applicable to the decision of this case.

In the case of *Leavers v. Cleary,* 75 Ill. 349, 352, 353, it is said: "It was obviously the intent of the parties that the mining should be confined to the lands embraced in the contract. No allusion is made to mining elsewhere. At the time the contract was made, it does not appear that the company had, or ever expected to have, any interest in lands adjoining those embraced in the contract. The construction the parties to the contract placed upon it themselves for seven years, by mining the lands named in the contract, and paying the stipulated amount per ton, during which time it is neither claimed nor insisted upon that the right exists to cut across the line, where coal might be obtained at a lower rate, may be resorted to as a means of determining the true intention of the contracting parties at the time the contract was executed.—*Lunn v. Gage,* 37 Inn. 19, 87 Am. Dec. 233. While it is true it is no part of the duty of courts to make contracts for parties, yet, in placing a construction upon a contract, it is proper to scrutinize the language used, and determine the intention, and then place that construction upon the contract which will carry into effect and enforce that intention. We are fully satisfied that it was not within the design or contemplation of either party to the contract involved in this case that the land and shaft embraced

[Brasfield v. Burnwell Coal Co.]

in the contract should be used for the purpose of mining coal from other or different lands than those mentioned in the contract; and when the defendant undertook to run an entry from the shaft to other lands, for the purpose of mining in such lands, and raising the coal through the shaft, he was violating the spirit of the contract, and seeking an undue advantage of complainants, which it was proper for a court of equity to restrain him from doing."

In the case of *Peters v. Phillips,* 63 Iowa, 550, 553, 19 N. W. 662, 664, it is said: "It does not appear from the contract that the plaintiff leased his land to the defendants to be used by them to establish the place for their mining operations on the surface of the earth, and from thence sink shafts and dig drifts and entries into other lands, and use the plaintiff's land as the place to locate the machinery and deposit the waste from the coal mined on the lands of others. By the allegations of the petition, this is just what defendants are doing. It needs neither argument nor authority to demonstrate that defendants have no such rights under the lease, and that the plaintiff is entitled to an injunction to prevent the further unauthorized use of his land for that purpose. If defendants desired to use the land of plaintiff for this purpose, they should have made a contract to that effect."

The case of *Beck & Sons v. Economy Coal Co.,* 149 Iowa, 24, at page 30, 127 N. W. 1109, at page 1111, is very much like the case at bar, and distinguishes it from other cases that would fall under a different rule if the lease authorized the mining of coal from other lands, which it might and no doubt would have done if the parties had contemplated or intended such use. It is there said: "Recurring to the contract in this case, it will be observed that there was a specific grant of

the right to construct underground entries, etc., for the purpose of mining and removing the coal from said leased land. This negatived another use unless specifically granted. That other uses might be claimed was recognized, and these were expressly set out as before stated; and none of these gave defendant the right to use the entries, railways, etc., except for specific purposes and upon a named consideration. These expressed grants clearly negatived any implied one which might otherwise arise under the maxim, 'Expressio unius est exclusio alterius.' The expression of one thing is the exclusion of another. See *Hearne v. Marine Ins. Co.,* 20 Wall. 493, 22 L. Ed. 395; *Thomas v. West Jersey Co.,* 101 U. S. 82, 25 L. Ed. 950. This rule, as will be observed, is applicable to contracts as well as to statutes, and it seems to me is quite controlling here. The grant was for an express purpose, and it confined the use of the entries and tracts to these purposes. All others were by necessary implication excluded. Defendants find no express grant of a right to use the entries on plaintiff's land for the purpose of mining coal from other mines save as it appears in the lease itself, and, had they used them for the purposes expressly provided in the lease, they would have had to pay for such use, etc."

We are not unmindful of the defense and contention of the lessee that what it is doing in mining coal from the Bryan land is proper and necessary to the economical mining of coal from the lessor's 120 acres of land on the river. The proper and sufficient reply to this defense or justification is that the lessor is not complaining of the mode or means by which the lessee is mining, or intends to mine, the coal from the river tract; but is complaining of the use of his home property for the purpose of mining the coal from the Bryan

land. We might concede that it was possible, practicable, and economical, to extend the openings on the home tract, *through the Bryan lands,* to complainant's river tract; and to bring the coal mined from the last-named tract, through these entries, over the lessee's home tracts, to its present tipple; but this would not warrant the lessee in using the surface of the lessor's home place, while he was mining the coal from several hundred acres of the Bryan land, because he was rendering the lessor no compensation therefor and because his operations in the Bryan land might consume the whole lifetime of the lease in question.

The lessor is not complaining of the lessee's transporting the coal of the former, over, under, or through, the Bryan lands; but he is complaining of the transporting of the coal from the Bryan land, over and through his home tract, and the use of his surface openings, tipples, etc., for mining and transporting the coal from the Bryan lands.

The mere fact that it is necessary, practical, or economical to get rights of way through or under the Bryan land to transport or to mine the coal on the complainant's river tract does not warrant the use of the plaintiff's home tract for the purpose of mining the coal from the Bryan land; any more than the necessity to obtain a right of way over the surface of the Bryan land, in order to transport the coal from complainant's river tract, would warrant the use of plaintiff's home tract for tenant houses, roads, etc., for the cultivation of the Bryan land for the term of 20 years. Surely no one would contend that because it was necessary to get a right of way over the Bryan lands, in the mining of plaintiff's coal, the lessee would be justified in the use of complainant's lands for the cultivation of the surface of the Bryan lands.

For the same reason, the mere fact (if it be a fact) that it is practical, economical, or even necessary, to drive an opening through the Bryan lands in order to get to a tract of the complainant's land, would not justify the use of the plaintiff's land for the purpose of mining the coal from the Bryan lands, except as it might be rendered necessary in making the entry through such lands.

Surely, it will not be seriously contended that it is necessary to move all the coal on the Bryan lands, several hundred acres in extent, in order to get an entrance through same to the complainant's river tract.

The lessee's contention in the last analysis is this: Let me alone and let me use your place while I am mining the coal from the Bryan tract; and, when I get through with it, I will then be up to and against your river tract, whereupon I can easily and economically mine the coal from it, through these entries on your home place and those that I have made in mining the Bryan lands. This might be all right, and it may be practicable and profitable to so mine the three tracts together; but there is no contract to that effect, and one of the necessary parties to such a contract will not consent; and the court has no power or right to make him consent, nor to authorize the lessee to so mine without the consent of the lessor. It is the duty of the court, so far as it can, to enforce the contract which the parties made, and as they made it, and not one which they could have made but did not make.

It therefore follows that the chancellor erred, in so far as he declined to issue a temporary writ of injunction, restraining the respondent from using the complainant's lands for the purpose of mining coal from the Bryan lands.

[Lake v. Russell, et al.]

The decree is reversed, and the case is remanded, with directions that the trial court issue a temporary writ of injunction in accordance with the opinion filed in this cause, and that said temporary injunction shall be in force until the determination of this suit; provided, however, that such order shall not, in any manner, restrain the respondent, or its servants or agents, from the use of the leased premises for the purpose of mining, transporting, or marketing the coal on or taken from the lands leased by the complainant to the respondent or to its predecessor in title.

Reversed and remanded. All the Justices concur, except DOWDELL, C. J., not sitting.